**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| KANAYO DERHEM, | ) | |
| | ) | **Case No. 1:20-cv-22318-KMW** |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED** |
| | ) | **COMPLAINT and** |
| BAY HOUSE MIAMI CONDOMINIUM | ) | **JURY DEMAND** |
| ASSOCIATION, CHARLES BRUMSTED, | ) | |
| JR., SEAN ZAHNISER, MIKE DESIMONE | ) | |
| JAMES PINKERT, JOSHUA PAUL, | ) | |
| ALEJANDRO ENRIQUE UTRERA BADENES, | ) | |
| JONATHAN FERREIRA, KW PROPERTY | ) | |
| MANAGEMENT, LLC, and JOSE VIDAL | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## I. PRELIMINARY STATEMENT

1.  This is an action by Plaintiff Kanayo Derhem pursuant to (1) the **Fair Housing Act of 1968**, 42 U.S.C. § 3601, et seq. ("FHA"), including (a) housing discrimination based on race and sex, and (b) retaliation for housing discrimination complaints;  (2) the **Civil Rights Act of 1866 and the Civil Rights Act of 1871**, including (a) 42 U.S.C. § 1981 (contract discrimination), 42 U.S.C. § 1982 (property discrimination), 42 U.S.C. § 1983 (civil rights discrimination), 42 U.S.C. § 1985 (conspiracy to discriminate), 42 U.S.C. § 1986 (neglect to prevent conspiracy to discriminate); (3) supplemental claims under the **Florida Civil Rights Act**, Fl. St. § 760.01, et seq. ("FCRA");  (4) supplemental claims under the **Florida Condominium Act**, Fl. St. § 718.101 et seq., et seq. ("Condo Act"); and (5) supplemental claims under **state common law**, including breach of fiduciary duty. Plaintiff seeks declaratory and injunctive relief to end the harassment and discrimination, in addition to compensatory and punitive damages, and other available relief.

## II.   PARTIES

2.      Plaintiff Kanayo Derhem is a citizen of the United States and a resident of Dade County, Florida.

3.      Defendant Bay House Miami Condominium Association, Inc. ("BHMCA") is a non-profit corporation organized and existing under the law of the State of Florida with its principal address at 600 NE 27th Street, Miami, Florida 33137.

4.      At all times relevant herein, Plaintiff was an owner and resident of unit #2605 (the "Unit") in the residential development owned and operated by Defendant BHMCA at 600 NE 27th Street, Miami, Florida 33137 (the "Development"). She purchased the unit under the name Kanayo Onyekwuluje. Derhem is her married name and the name that she has used exclusively since April 2019.

5.      KW Property Management, LLC ("KWPM"), with corporate headquarters at 8200 NW 33rd Street, Suite 300, Miami, Florida 33122, was a property manager hired by BHMCA to manage the property during relevant times until approximately January 1, 2020.

6.      The defendants listed below in this Section shall be known as the "Individual Defendants" collectively.

7.      Mr. Charles Brumsted, Jr. is and has always been at all relevant times the President of the Board of Directors for Defendant BHMCA, and was at all relevant times an officer, director and agent of BHMCA by virtue of that position.

8.      Mr. Sean Zahniser is and has always been at all relevant times the Treasurer of the Board of Directors for Defendant BHMCA, and an officer, director and agent of BHMCA by virtue of that position.

9.      Mr. Mike Desimone is and has always been at all relevant times the Secretary of the Board of Directors for Defendant BHMCA, and an officer, director and agent of BHMCA by virtue of that position.

10.      Mr. James Pinkert is and has been at all relevant times a member of the BHMCA Fining/Grievance Committee, and an agent of BHMCA by virtue of that membership.

11.      Mr. Joshua Paul was a member of the BHMCA Fining/Grievance Committee at relevant times, and an agent of BHMCA by virtue of that membership.

12.      Mr. Alejandro Enrique Utrera Badenes was a member of the BHMCA Fining/Grievance Committee at relevant times, and an agent of BHMCA by virtue of that membership.

13.      Mr. Jonathan Ferreira was a manager employed by BHMCA's management company, Castle Management Co. since at least March of 2020, and an agent of BHMCA by virtue of that position.

14.      Mr. Jose Vidal was a manager employed by BHMCA's management company, KW Property Management, LLC until approximately February 1, 2020, and an agent of KWPM by virtue of that position.

### III.      PROCEDURAL HISTORY

15.      Plaintiff has taken all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

### IV.      JURISDICTION AND VENUE

16.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 3613, 28 U.S.C. §§ 1331 and 1343 in that this is a civil action seeking to redress the deprivation of the right to fair housing and equal protection secured to the Plaintiffs by the Fair Housing Act and the Civil Rights Acts of 1866 and 1871, and pursuant to 28 U.S.C. § 1337 in that all Defendants' unfair housing practices

create a restraint on commerce; and pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief.

17.     The Court has jurisdiction of the state law supplemental claims pursuant to 28 U.S.C. § 1367, which arise out of a common nucleus of operative facts, circumstances, occurrences, witnesses and evidence, and are thereby so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution,

18.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) because all Defendants are residents of Florida and reside in the Southern District of Florida, and because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

## V.     FACTS

19.     Plaintiff is a female citizen of the United States Of America.

20.     Plaintiff has a female gender identity.

21.     Plaintiff has a feminine gender expression.

22.     Plaintiff is a woman who is transgender.

23.     Plaintiff is Black and is of African and African-American descent.

### A. Discrimination in Housing

### *Discrimination in Purchase of Condominium*

24.     Plaintiff purchased condominium unit #2605 (the "Unit") at Defendant BHMCA's Development in February 2019.

25.     The Development is a condominium building with 165 individual units, including the Unit occupied by the Plaintiff.

26.     The Development features a number of amenities available for use of the residents, including a swimming pool, a hot tub, a grill, a sun terrace, a fitness center, a business center, a media/ theatre room and other recreation areas (collectively, the "Amenities").

27.     The Development also contains a number of common areas which are necessary to access in order to gain access to the unit: such as hallways, elevators, stairways, a lobby and a parking garage (collectively, "the Common Areas").

28.     The Development employs a number of staff, including a valet service and a 24-hour concierge service.

29.     The Unit is a three-bedroom apartment of approximately 1677 interior square feet and two terraces measuring a combined 296 square feet.

30.     The Unit is on the 26th floor of the Development.

31.     The Unit is a dwelling, as defined within the FHA.

32.     Defendant BHMCA, and through them upon information and belief, Defendants Brumsted, Zahniser, Desimone, Pinkert, Paul, Badenes, Ferreira, KWPM and Vidal, was aware of Plaintiff's race and sex as a result of readily available public information regarding Plaintiff and the extensive background checks performed by Defendant BHMCA in her purchase of the Unit.

33.     Defendants BHMCA and Brumsted treated Plaintiff differently because of her race and sex.

34.     Had Plaintiff's race been different, this would have yielded a different choice by Defendants BHMCA and Brumsted.

35.     Had Plaintiff's sex been different, this would have yielded a different choice by Defendants BHMCA and Brumsted.

36.     In the process of closing, Defendant BHMCA failed and refused to approve Plaintiff's application in a reasonable amount of time, and without offering a legitimate, non-discriminatory reason for delays.

37.     Defendant BHMCA would have approved a non-transgender Black applicant within a reasonable amount of time.

38.     Defendant BHMCA would have approved a transgender white applicant within a reasonable amount of time.

39.     On information and belief, BHMCA approved all other applicants similarly situated to Plaintiff, but outside her protected categories, in less time.

40.     These applicants were similarly situated, in that they met the financial, residence and other requirements of the terms of purchase and sale applicable to BHMCA.

41.     More specific information on this topic is peculiarly in the possession and control of Defendant BHMCA.

42.     Plaintiff and her closing attorney made numerous attempts to contact Defendant BHMCA and Mr. Brumsted.

43.     Mr. Brumsted did not return phone calls or emails, provided no information about his whereabouts or alternate persons to contact in his absence.

44.     Upon information and belief, this was a deliberate effort to dissuade and prevent Plaintiff from proceeding with the closing based upon her race and sex.

45.     Mr. Brumsted's personal purpose for engaging in such actions were to indulge his personal prejudices against Plaintiff's race and sex, as set forth below in detail, and to protect what he perceived to be a threat to his personal property values based on prejudice.

46.     Corporate Defendants were aware of these actions, and tolerated, participated in, condoned and ratified Brumsted's actions.

47.     Mr. Brumsted approved the closing only after direct contact from Plaintiff's attorney, Jodi Strang, on the morning of February 12, 2019. In her contact, Strang advised of the planned filing of an anti-discrimination lawsuit if Defendant BHMCA failed to respond to Plaintiff. As a result, Mr. Brumsted reluctantly met with Plaintiff that same afternoon.

### *Discriminatory Animus, Comments and Actions by Mr. Brumsted towards Plaintiff*

48.     Mr. Brumsted has demonstrated continued hostility against Plaintiff on the basis of her race and sex.

49.     At the meeting arranged by Plaintiff's attorney on the afternoon of February 12, 2019, Mr. Brumsted asked Plaintiff in a brusque manner designed and intended to humiliate her "Can you have kids?"

50.     This was a reference to Plaintiff's sex, as Mr. Brumsted was seeking to verify whether Plaintiff was assigned female at birth.

51.     He also restated at this time, "this is a family-oriented building," implying that Plaintiff's presence was offensive to families with children.

52.     On December 11, 2019, Mr. Brumsted made a comment referencing Plaintiff, while she and others were standing nearby in the lobby, that "the elevator is taking too long, why doesn't she go and report that as discrimination..."

53.     The import of this remark was to indicate that Plaintiff had made complaints of discrimination, and that such complaints were as ill-founded as a discrimination complaint against the elevator would be.

54.     The intent of the remark was to humiliate Plaintiff because of her discrimination complaints and to dissuade her from making further complaints.

55.     Michael Brown, a new owner who is also black, witnessed this event. Mr. Brown was speaking with the Plaintiff at the time of the event.

56.     In regard to Mr. Brown, Mr. Brumsted asked Plaintiff: "Is this another one of your illegal Airbnb's, your illegal renters?"

57.     The import of this question was to assert that the Plaintiff's meeting and association with Mr. Brown was a violation of the condominium's bylaws, and that Mr. Brown's presence in the building was therefore illegal.

58.     The design and intent of the remark was to humiliate Plaintiff because of her race, her association with another Black person, and her discrimination complaints, to dissuade her from making further complaints, and to suggest to a third party that she was engaged in criminal, illegal and unsavory behavior.

59.     Plaintiff explained that Mr. Brown was a new owner, with whom he had previously met.

60.     Mr. Brumsted stated that he had not recognized Mr. Brown and apologized to him.

61.     This apology implied that Mr. Brumsted had judged Mr. Brown based on his race and his association with Plaintiff

62.     On or around December 11, 2019, and again on December 21, 2019, Mr. Brumsted stated to Plaintiff in the presence of others that Plaintiff is "a disgrace to the building".

63.     Upon information and belief, Mr. Brumsted intended to mean that she is a "disgrace to the building" because of her race and sex.

64.     On or around December 12, 2019, Mr. Brumsted referred to Plaintiff as a "monkey" following a meeting of the condominium's BHMCA Fining/Grievance Committee, in the presence upon information and belief of Defendant James Pinkert.

65.     "Monkey" and other comparisons to primates is a well-known racial slur denigrating the humanity of Black people.

66.     Mr. Brumsted intended to denigrate and humiliate Plaintiff by means of this remark, and to improperly influence the BHMCA Fining/Grievance Committee to implement discriminatory fines against Plaintiff .

67.     Mr. Brumsted also took actions designed and intended to make life at BHMCA difficult for Plaintiff because of his animus based on race and sex.

68.     For example, he told Plaintiff "you are not allowed to have roommates," but  stated that in his official capacity he aided a unit owner on the floor below, not in Ms. Derhem's protected categories, to have roommates because he "likes those guys."

69.     "Roommates" in this context refers to guests not in the same family living together with the Unit Owner who were not leaseholders pursuant to the Association's Governing Documents, including the Declaration, Section XXII(2) and the Adopted Rules and Regulations § 44.

70.     Mr. Brumsted, on his own behalf and on behalf of BHMCA, continued this denial of permission toward Plaintiff over a period of time lasting many months.

71.     Defendants BHMCA and Brumsted would have allowed a non-transgender Black person to have guest roommates.

72.     Defendant BHMCA would have allowed a transgender white person to have guest roommates.

73.     The unit owner and/or unit tenant was similarly situated to Plaintiff, in that they met the financial, residence and other requirements of ownership and/or tenancy applicable to BHMCA, but were outside Plaintiff's protected categories of race and sex.

74.     Specific information regarding the unit owner and/or unit tenant referenced is peculiarly within the knowledge or control of Defendant BHMCA and Defendant Brumsted.

75.     BHMCA was aware of and perpetuated, condoned  and/or ratified Mr. Brumsted's pattern of discriminatory conduct, despite repeated specific complaints to BHMCA.

76.     Upon information and belief, other Individual Defendants Zahniser, Desimone, Pinkert, Paul, Badenes, Ferreira, KWPM and Vidal, were aware of Brumsted's pattern of discriminatory animus and conduct because he communicated it to them before, during and after meetings they attended with him, and on phone calls, and they perpetuated, condoned  and/or ratified Mr. Brumsted's pattern of discriminatory conduct, despite repeated specific complaints of discrimination of which they were made aware by Mr. Brumsted.


***Discriminatory Comments and Actions by Mr. Vidal towards Plaintiff***

77.     Mr. Jose Vidal, a manager employed by BHMCA's management company,  Defendant KWPM, working on location at BHMCA, has demonstrated continued hostility against Plaintiff on the basis of her race and sex.

78.     For example he wrote a text message regarding Plaintiff that he sent to her guest, stating regarding Plaintiff: "I try to avoid her at all cost" and "my staff dislikes her."

79.     Plaintiff's guest advised Plaintiff that Mr. Vidal, Mr. Brumsted and the association's attorney had said to the guest that they intended to "get you," referring to Plaintiff, and intended "to take your home," referring to taking damaging actions against Plaintiff.

80.     When Plaintiff asked him a question in his office, Mr. Vidal yelled and cursed at her, and called the police to have her forcibly removed.

81.     Mr. Vidal was told by the police that this was not a legitimate reason to call the police.

82.     Mr. Vidal showed Plaintiff a picture of her that he had researched on the internet prior to her gender transition, of which Plaintiff was unaware, and indicated by facial expression, body language and gestures that he was calling into question her femininity.

83.     Additionally, Mr. Vidal instructed his staff to harass the Plaintiff and her guests.

84.     He encouraged his staff to disrespect the Plaintiff and to refuse her services.

85.     He attempted to interfere with her ability to stand for election as a Board member, including failing to mail the Plaintiff's board election registration form, and ignoring her requests for vital information regarding elections.

86.     Mr. Vidal's personal purpose for engaging in such actions was to indulge his personal prejudices against Plaintiff's race and sex and to fulfill Mr. Brumsted, BHMCA and defendant's directives.

87.     Defendant KPMW was on notice of Vidal's actions by and through Defendant Vidal.

88.     Defendant BHMCA was on notice of Vidal's actions by and through Defendant Brumsted, and tolerated, participated in, condoned and ratified Vidal's actions.

89.     Upon information and belief, the other Individual Defendants were aware of, perpetuated, condoned and/or ratified Mr. Vidal's pattern of discriminatory conduct by and

through conversations with Mr. Brumsted and despite repeated specific complaints of which they were aware.

90.     KWPM was on notice of these actions by and through Defendant Vidal, and tolerated, condoned and ratified Defendant Vidal's pattern of discriminatory conduct, despite repeated specific complaints to KWPM.

91.     Upon information and belief, the other Individual Defendants were aware of, perpetuated, condoned and/or ratified Mr. Vidal's pattern of discriminatory conduct, by and through conversations with Mr. Vidal, despite repeated specific complaints of which they were aware.

### *Misuse of Violations System Targeting Plaintiff*

92.     In or about July or August 2019, Plaintiff's reasonable access to her Unit and the Amenities were denied, through deactivation by BHMCA, and its Board, composed of Defendants Brumsted, Zahniser and Desimone, and its Grievance/Fining Committee, of which certain Defendants were then members, of the fob key issued to her as an owner, without good reason or justification, in violation of Defendant BHMCA's Rules & Regulations and in derogation of her rights as an owner of a unit.

93.     Plaintiff contacted management to determine the grounds for this denial of access and was refused any explanation.

94.     Given the erratic and discriminatory behavior of Mr. Brumsted, Mr. Zahniser and Mr. Desimone, Plaintiff decided that it would be in the best interests of the condominium owners, if she were to run for election to the Board of Directors.

95.     Plaintiff filed documents on October 17, 2019, with the condominium in preparation for her run for the Board.

96.     Plaintiff emailed Mr. Vidal and Mr. Brumsted requesting information about how to run for the Board. Those emails went unanswered.

97.     Ms. Derhem had previously notified BHMCA, Mr. Brumsted and Mr. Vidal that her currently used name is Kanayo Derhem and that she would be known by that name henceforth.

98.     Mr. Vidal and Mr. Brumsted attempted to thwart Plaintiff's board candidacy, ignoring her emails, failing to mail the Plaintiff's board election registration form, and by changing Plaintiff's name on the ballot so as to misrepresent Plaintiff's name and confuse voters by using her maiden name.

99.     The rules of the Development stipulate that an individual cannot run for Board of Directors if they have unpaid fines for violations.

100.    Plaintiff was later informed that, at a meeting of the Board of Directors on October 22, 2019, BHMCA, by Mr. Brumsted, Mr. Zahniser and Mr. Desimone, approved $2100 in fines against Plaintiff.

101.    The rules of the Development stipulate that denial of access cannot occur until 90 days of delinquency have passed.

102.    These fines and denial of access were inappropriately assessed under the rules of the Development and were instead based on her race and sex.

103.    Defendant BHMCA would not have fined or denied access to a non-transgender Black owner and/or resident on this basis.

104.    Defendant BHMCA would not have fined or denied access to a transgender white owner and/ or resident on this basis.

105.    Upon information and belief, a similarly situated owner, not in Plaintiff's protected categories, was not fined or denied access.

106.    By similarly situated, Plaintiff refers to a person who committed the same alleged violations as those alleged against Plaintiff.

107.    This information is peculiarly within the possession or control of Defendant BHMCA and Defendant Brumsted.

108.    On December 28, 2019, Sara Lopera ("Sara"), an employee acting on behalf of Corporate Defendants, and at the direction of Defendant Brumsted, blocked Plaintiff's access to the condo unit, parking garage, front door, all doors and amenities. She did this by deactivating her key fob.

109.    As a result, Plaintiff was forced to walk down the stairs to exit.

110.    She left the building and used the callbox to ask the front desk to let her in. The front desk refused to let her in to access the elevator. As a result, Plaintiff was forced to climb 26 stories to her unit.

111.    90 days of delinquency had not yet passed at the time that reasonable access to her Unit and the Amenities was denied by deactivation of her fob key.

112.    The fines were imposed without a legitimate, nondiscriminatory reason.

113.    Upon information and belief, a similarly situated owner, not in Plaintiff's protected categories, was not denied access.

114.    By similarly situated, Plaintiff refers to a person who committed the same alleged violations as those alleged against Plaintiff.

115.    This information is peculiarly within the possession or control of Defendant BHMCA and Defendant Brumsted.

116.    Defendant BHMCA would not have denied access to a non-transgender Black resident.

117.    Defendant BHMCA would not have denied access to a transgender white resident.

118.    The reason the fines were imposed was for the purpose of discrimination against Plaintiff based on race and sex, and in advancement of their scheme to discriminate against the Plaintiff, to implement fines as leverage toward a potential foreclosure proceeding and to gain possession of her unit in foreclosure, as well as to block her from running for a Board position.

119.    In order to regain access to her Unit and the Amenities, Plaintiff was forced to pay these discriminatory fines that upon information and belief were imposed with discriminatory intent by Defendant BHMCA and the BHMCA Board by and through Defendants Brumsted, Zahniser and Desimone, as well as then-members of the Grievance/Fining Committee.

120.    On December 16, 2019, five days after she filed documents with the condominium in preparation for her run for the Board, Plaintiff received four letters from Defendant Jose Vidal imposing fines for various alleged violations and advising her to appear before the BHMCA Fining/Grievance Committee, consisting of Defendant Pinkert and Ms. Elizabeth Perez, for a hearing on December 30, 2019.

121.    These proposed fines were without merit, and known to Defendant Pinkert and Defendant Vidal to be without merit.

122.    For example, the first letter stated that she had received a proposed $100 fine "for attempting".

123.    It is unclear to what this referred.

124.    Two of the letters charged her for having a dog without a leash in the elevator, for which a fine of $100 was sought.

125.     Upon information and belief, Defendant BHMCA and Defendant Vidal first became aware of these incidents upon reviewing elevator video for the purpose of targeting the Plaintiff in an attempt to find violations with which they could charge Plaintiff so that she could not serve on the Board, and to make life at BHMCA hard for Plaintiff to advance their discriminatory scheme.

126.     The first letter related to an incident in which Plaintiff's dog unintentionally escaped the Unit and was retrieved without incident.

127.     The second letter related to an incident in which Plaintiff was not holding a leash due to a shoulder injury, for which she provided medical documentation to Defendants BHMCA and Brumsted.

128.     Other residents, not in Plaintiff's protected categories, have taken their dogs without a leash in the elevator and other Common Areas, of which Defendants BHMCA and Brumsted were aware, and these residents were not charged with a violation.

129.     This information is peculiarly in the possession and control of Defendants BHMCA and Brumsted.

130.     Another letter imposed a $1000 fine on Plaintiff, alleging she had a minimum of ten violations for "having an unapproved person living in the unit for more than 21 days."

131.     This was patently untrue, because Plaintiff notified Defendant BHMCA of her guest's visit on November 2, 2019 and notified them to add her to the guest list as an "approved guest."

132.     Plaintiff subsequently notified Defendant BHMCA on November 21, 2019 that her guest would be leaving on November 23, 2019 and returning on November 24 or 25.

133.     Thus, Plaintiff's guest was not an "unapproved guest."

134.    Defendant BHMCA had no reasonable basis on which to disapprove of Plaintiff's guest.

135.    These facts were known to the Corporate Defendants, by and through Defendants Brumsted and Vidal, and upon information and belief known by Defendants Zahniser, DeSimone, Pinkert, Paul and Badenes through conversations with Defendants Brumsted and Vidal.

136.    These facts rendered the alleged violations meritless, and by this knowledge the said Defendants knew the alleged violations to be meritless.

137.    The BHMCA Fining/Grievance Committee, including upon information and belief Individual Defendants who were then-members of the Committee, prosecuted these meritless violations and imposed fines because of Plaintiff's race and sex, and in retaliation for her complaints.

138.    The Corporate Defendants, by and through Defendants Brumsted and Vidal, engaged in a pattern of heightened scrutiny of Plaintiff in order to find violations not enforced against other similarly situated owners not in Plaintiff's protected categories, intended and designed to advance their discriminatory schemes.

139.    On March 19, 2020 BHMCA held a BHMCA Fining/Grievance Committee Hearing to decide whether or not to levy various fines against Plaintiff.

140.    James Pinkert, Alejandro Enrique Utrera Badenes, and Joshua Paul  were the members of the three person BHMCA Fining/Grievance Committee on that date.

141.    The March 19, 2020 hearing was the second hearing conducted on these matters.

142.    The previous BHMCA Fining/Fining Committee Hearing was held on December 30, 2019 and was made up of only two members, James Pinkert and Elizabeth Perez, in violation of Florida Statute 718.303.

143.    The December 30, 2019 BHMCA Fining/Fining Committee did not afford Plaintiff an opportunity to be heard and elected to table the matter of Plaintiff's fines, in violation of the following sections of Fl. St. 718.303(3)(b) and (4)-(6).

144.    Defendant James Pinkert was the only member of the BHMCA Fining/Committee that imposed the fines on Plaintiff on March 19, 2020, that also sat on the December 30, 2019 BHMCA Fining/Fining Committee. The other members did not have the benefit of information provided at the December 30, 2019 meeting

145.    After the previous Fining Committee tabled the matter of Plaintiff's fines, BHMCA President, Charles Brumsted, Jr., aggressively berated the two committee members saying "You let that monkey walk all over you… two is not enough… I need to add more to the committee…" followed by coaching and ordering the committee to impose the fines next time and without allowing the Plaintiff an open forum to refute or defend against the fines.

146.    Elizabeth Perez expressed concerns and discontent with Charles Brumsted, Jr.'s orders and he told her "either you do it or I will replace you with someone who will," or words to that effect. She was subsequently removed from the committee and replaced by another Individual Defendant, who, upon information and belief, was Defendant Paul or Defendant Badenes.

147.    She specifically expressed concern about not being able to "see the picture [evidence]" that the HOA had brought against Plaintiff. To which Mr. Brumsted responded: "all you need to do is to implement the fine--that's it; implement the damn fine!"

148.    The BHMCA Fining/Grievance Committee acting on behalf of BHMCA met on March 20, 2020, with two newly appointed members, Alejandro Enrique Utrera Badenes, and Joshua Paul, imposed the fines against Plaintiff.

149.    Defendants, Jonathan Ferreira and James Pinkert also attended this meeting, which was to determine the entry of certain discriminatory fines against Plaintiff.

150.    At the March 20, 2020 hearing, Plaintiff was not afforded the opportunity to be heard because the BHMCA Fining/Grievance Committee incorrectly said she was given the opportunity to be heard at the prior hearing.

151.    Contrary to this assertion, Plaintiff was not given any opportunity to be heard on these new matters at the previous hearing, and she made the BHMCA Fining/Committee aware of this, and her right to do so under Florida law.

152.    Despite being made aware of these facts and Florida statutes, the BHMCA Fining/Committee again shouted her down, refused to allow Plaintiff to be heard, refused to take any meeting minutes of the March 20, 2020 hearing, and entered all fines against Plaintiff.

153.    Upon information and belief, Defendants Pinkert, Paul, Badenes and Ferreira acted at the behest of and in concert with Defendant Brumsted, Jr.to impose these fines against Plaintiff because of her race and sex.

154.    Ferreira further aggressively counseled the BHMCA Fining/Grievance Committee on the Bylaws and Florida law, soliciting, aiding and abetting the imposition of the fines against Plaintiff, in an effort to ensure that Plaintiff could not, and did not exercise her rights.

155.    Upon information and belief,  the Individual Defendants, at the behest of Defendant Brumsted, imposed or assisted in imposing fines upon Plaintiff because of her protected categories and in retaliation for her discrimination complaints.

156.    Defendant BHMCA, by and through the Individual Defendants who were members of the Board and members of the Grievance/Fining Committee, engaged in selective prosecution based on the Plaintiff's race and sex because they were aware by and through Defendant Brumsted that other similarly-situated owners, not in Plaintiffs' protected categories, had engaged in similar behavior but did not allege violations against those owners.

157.    The alleged violations and proposed fines were lodged in order to disqualify Plaintiff for Board service, as well as to make her life at BHMCA as difficult as possible, because of her race and sex and in retaliation for her complaints of discrimination.

158.    BHMCA also asserted liens against Plaintiff on false pretenses.

159.    On April 9, 2020 BHMCA and Charles Brumsted, Jr. sent Plaintiff a Notice of Intent to Record a Claim of Lien citing unpaid Maintenance & Special Assessments "thru April 2020" (not yet delinquent), Late Fee, Fines, Interest, Certified Mail Charges, Other Costs, and Attorneys Fees.

160.    The unpaid items that are delinquent are the illegal and discriminatory fines imposed on Plaintiff.

161.    Plaintiff had paid these Maintenance & Special Assessments.

162.    Defendant BHMCA was on notice of these actions by and through Defendant Brumsted, and tolerated, participated in, condoned and ratified the discriminatory actions.

163.    Defendant KWPM was on notice of these actions by and through Defendant Vidal, and aware of and perpetuated, condoned  and/or ratified this discriminatory conduct, despite repeated specific complaints to KWPM.

164.     Upon information and belief, the other Individual Defendants were aware of this discriminatory conduct by and through conversations with Defendants Brumsted and Vidal, and perpetuated, condoned  and/or ratified this discriminatory conduct, despite repeated specific complaints of which they were aware.

### *Harassment Regarding Board Elections*

165.     Plaintiff ran for the Board of Directors in an election held on December 11, 2019.

166.     On December 6, 2019, Plaintiff received an anonymous email disparaging her, signed "BAY HOUSE OWNERS SINCE 2015" which was sent to several other neighbors in the building.

167.     In this email, Plaintiff was falsely accused of being late on her condo dues and threatened with foreclosure.

168.     Plaintiff was also falsely alleged to have been investigated by the police at the Unit.

169.     Plaintiff was described as "not good for our values", which was followed by the statement "Children live here."

170.     The references to "our values" and "children" were a reference to dislike for Plaintiff's sex, gender, gender identity, gender expression and gender non-conformity.

171.     Plaintiff requested this individual to stop harassing her, and denied the false allegations.

172.     In response, the anonymous owner referred to her as a "stalker," which was a reference to alleged criminal activity.

173.    The email then included a statement contrasting her behavior with the "professional and classy" behavior of Mr. Brumsted and the Board of Directors, which was a reference to Plaintiff as unprofessional and déclassé.

174.    Upon information and belief, the anonymous owner received information from and acted in concert with Defendant Brumsted.

175.    Plaintiff found these emails unwelcome and offensive based on her race and sex, as well as physically threatening, creating fear for her physical safety and emotional distress.

176.    Plaintiff notified Defendants Brumsted and Defendant Vidal and Defendant BHMCA of these emails.

177.    These Defendants did not take prompt and effective action to stop this harassment.

178.    Upon information and belief, these Defendants supplied the emails to the BHMCA community.

179.    Plaintiff reasonably believed these false allegations were intended to threaten her and to dissuade her from standing for election and to dissuade others from supporting her.

180.    As a result, Plaintiff and Plaintiff's family feared for her safety and for the safety of her guests.

### *Discriminatory Treatment of Plaintiff's Guests and Family Members*

181.    On December 21, 2019, Sara, a member of BHMCA staff at the front desk not in Plaintiff's protected categories, refused to serve Plaintiff, and stated "we don't provide concierge services to you."

182.    This reference to "concierge service" was a reference to the fact that the BHMCA staff was unwilling to serve Plaintiff because of her race and sex and because she had made discrimination complaints.

183. On December 25, 2019, in the presence of Plaintiff's mother, Sara again made a statement to the same effect.

184. Sara also stated that her superiors, including without limitation Defendants Brumsted and Vidal, were aware of her behavior and that they condoned it.

185. On December 27, 2019, Sara made a similar statement to Plaintiff in front of a third party.

186. At this time, Defendant Brumsted came to the lobby.

187. Plaintiff asked Mr. Brumsted to provide support to Plaintiff as an owner deserving of services.

188. In response, Mr. Brumsted explicitly condoned her statement, stating "I won't get involved."

189. On numerous occasions, including but not limited to September 14, 2019, November 8, 2019, December 25, 2019, and December 30, 2019, Plaintiff's guests were interrogated by Defendant BHMCA's staff members, including but not limited to Sara, in a hostile and defamatory manner in a manner intended and calculated to humiliate and embarrass Plaintiff.

190. For example, they have made statements and posed questions to Plaintiff's guests such as

1. a. "You are not even supposed to be here"

2. "You're an illegal Airbnb"

3. "How much did you pay to be here?"

4. "I don't know what kind of business she's running up there"

5. "This is a family place...you're not welcome here"

6. "Children live here"

7. "You make this place look bad; I'm a classy guy"

8. "How long are you staying here?"

9.   "Don't you know she is behind on her dues?"

10. "Don't you know she's about to get foreclosed on?";

11. "Don't you know they're about to take her house?"

12. "None of my staff likes her"

13. "She's a disgrace to the building"

14. "She tried to sue her other building"

191.    Defendant Brumsted encouraged Sara to aggressively and negatively engage with the Plaintiff in an effort to try to catch the Plaintiff in some sort of wrongdoing so that BHMCA could then impose more fines against her, report her to the authorities, and/or further engage in his scheme to defame the Plaintiff, discriminate against her, retaliate against her, deny her peaceful enjoyment of her home and to fraudulently create discriminatory fines as cause of action for foreclosure and repossession of her home.

192.    For example, Sara sent security up to Plaintiff's unit and demanded that Plaintiff's nail technician, who had arrived to do her nails, be removed from the premises.

193.    Sara also called the police and lied to them about Plaintiff, stating that Plaintiff was not the owner of the unit.

194.    Defendant Brumsted was aware of these facts and circumstances but nonetheless allowed and encourage them to continue in order to harm Plaintiff.

195.    The reason for these statements and interrogations was to harass and intimidate Plaintiff because of her race and sex, and because of making discrimination complaints.

196.    Plaintiff notified Corporate Defendants of the harassing actions and statements set forth above, but BHMCA and KWPM failed to acknowledge or to take prompt and effective action to stop the harassment.

197.    Despite the dozens of complaints that Plaintiff made concerning the harassment, safety and discrimination against her, her family members and her guests, the hostility still continues.

198.    Defendant BHMCA was on notice of these actions by and through Defendant Brumsted, and tolerated, participated in, condoned and ratified these actions, despite repeated specific complaints to BHMCA.

199.    KWPM was on notice of this discriminatory conduct by and through Defendant Vidal, and perpetuated, condoned  and/or ratified this discriminatory conduct, despite repeated specific complaints to KWPM.

200.    Upon information and belief, the other Individual Defendants were aware of this conduct by and through conversations with Defendant Brumsted, and perpetuated, condoned  and/or ratified this discriminatory conduct, despite repeated specific complaints of which they were aware.

### *Discriminatory Treatment of Plaintiff's Rentals*

201.    Defendant BHMCA's representative represented, on two separate occasions, that owners would be able to earn income by means of rentals.

202.    Defendant BHMCA's representative communicated this representation to Plaintiff's real estate agent.

203.    Plaintiff purchased her unit based, in large part, on the understanding and representation of Defendant BHMCA that earning income, by means of rentals to guests, as defined in the Association Documents, would be permitted.

204.    This representation was material to the Plaintiff's home-purchase transaction.

205.    Defendant BHMCA intended that the representation induce Plaintiff to enter into the purchase transaction and that Plaintiff rely on the representation.

206.   Nothing in any BHMCA governing document or regulation prohibited rentals to guest roommates.

207.   After Plaintiff purchased her condominium unit in reliance on the representations and governing documents pertaining to rentals, BHMCA adopted new Rules and Regulations prohibiting specifically "Airbnb" rentals.

208.   These new Rules and Regulations were intended to prevent specifically Plaintiff from exercising her right to rent rooms in her Unit using Airbnb.

209.   These new Rules and Regulations were intended to single out Plaintiff and her rental to guest roommates through Airbnb because of her sex and race.

## CAUSES OF ACTION

### COUNT 1
### Housing Harassment and Hostile Work Environment on the Basis of Race and Sex
### 42 U.S.C. § 3601, et seq. and 24 CFR § 100.600, et seq.
### [As to all Defendants]

210.   Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

211.   Plaintiff is a member of a protected category with regard to race.

212.   Plaintiff is a member of a protected category with regard to sex.

213.   Defendants instituted, participated in, were aware of, condoned and/or ratified a campaign of harassment and discrimination as set forth above because of and motivated by race and sex in violation of 42 U.S.C. § 3604(b) and the standards set forth in 24 CFR § 100.600(a)(2).

214.   This harassment was related to and in connection with the availability, sale, rental, and use or enjoyment of Plaintiff's dwelling, and the terms, conditions, and privileges of the

sale and rental thereof, and the provision and enjoyment of services and facilities, and the availability, terms, and conditions of a residential real estate-related transaction.

215.   Plaintiff was targeted for harassment by the corporate Defendants, and Defendants Brumsted and Vidal, and upon information and belief the other Individual Defendants, because of her race and sex.

216.   Defendants Brumsted and Vidal made statements regarding Plaintiff that were derogatory and demonstrated animus because of her race and sex.

217.   The Corporate Defendants were on notice of these statement by and through Brumsted and Vidal.

218.   Upon information and belief, the other Individual Defendants were aware of these statements by hearing them from Brumsted and Vidal.

219.   The Corporate Defendants, Defendants Brumsted and Vidal, and upon information and belief the other Individual Defendants, engaged in acts and statements that, although otherwise seemingly neutral with regard to race and sex, were intended to harass Plaintiff based on race and sex, by making circumstances at BHMCA so difficult and intolerable for Plaintiff that she would leave the development, all because Brumsted and Vidal held animus against Plaintiff's race and sex.

220.   The corporate Defendants and upon information and belief the other Individual Defendants acted in concert with Defendants Brumsted and Vidal to perpetuate, condone and/or ratify the hostile environment based on race and sex.

221.   This harassment was and is severe and pervasive.

222.   This hostile environment unreasonably interfered with Plaintiff's reasonable enjoyment of her property.

223.    The hostile environment began at the time Plaintiff sought to purchase the unit, and continued after her purchase to the present time.

224.    The effects of the hostile environment alleged herein were pervasive because they were felt by Plaintiff daily. Plaintiff felt daily humiliation and despair as a result of her reasonable fear of continued harassment at any moment.

225.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, occurred because of Plaintiff's race and sex.

226.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, also occurred because of retaliation against Plaintiff based on her reasonable and good faith complaints of discrimination as detailed above.

227.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, acted intentionally or in a manner deliberately indifferent to the rights of Plaintiff.

228.    Defendants BHMCA and KWMP, as the owner and operator of the property, respectively, are liable for the violation of Plaintiffs' rights because, at all times relevant hereto, Defendants Charles Brumsted and Jose Vidal were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of these Defendants.

229.    Defendants Brumsted and Vidal are liable for the violation of Plaintiff's rights because of their discriminatory and harassing behavior towards Plaintiff because of race and sex.

230.     Defendants BHMCA, KWMP, Brumsted and Vidal acted in reckless disregard of the federal rights of Plaintiff, knowing that harassment and hostile environment based on race and sex is prohibited under federal law, and that their actions were because of race and sex.

231.     The other Defendants are liable for the violation of Plaintiff's rights because of their acting in concert with Defendants BHMCA, KWMP, Brumsted and Vidal to tolerate, perpetuate, ratify and condone the harassment and discrimination, of which they were aware from Defendants Brumsted and Vidal, and in which they participated.

232.     As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant award compensatory damages, punitive damages (as against Defendants BHMCA Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 2**
**Discrimination in Contracts on the Basis of Race and Sex**
**42 U.S.C. § 1981**
**[GOOD FAITH ARGUMENT FOR EXTENSION,**
**MODIFICATION OR REVERSAL OF LAW]**
**[As to All Defendants]**

233.     Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

234.    Under Section 1981 of the Civil Rights Act of 1866, "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C § 1981(a).

235.    Defendants' actions did not accord Plaintiff the right to make contracts and the right to full and equal benefits as is enjoyed by other citizens.

236.    Defendants' actions did not accord Plaintiff the right to make contracts and the right to full and equal benefits as is enjoyed by white citizens.

237.    Defendants' actions constituted a disparity in treatment between Plaintiff and other citizens, including white citizens, in regard to contracts and benefits.

238.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, were because of and motivated by Plaintiff's race and sex.

239.    The discriminatory actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants,  facially based on sex were motivated by race.

240.    Because of Plaintiff's race, she was not considered sufficiently female.

241.    The discriminatory actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, were intentional.

242.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, excluded the Plaintiff from enjoying an environment free from a hostile and intimidating environment based on race.

243.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, retaliated against Plaintiff for making reasonable and good faith complaints about her right to make contracts and the right to full and equal benefits.

244.    Defendants BHMCA and KW Property Management, as the owners and operators of the property, are liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 because, at all times relevant hereto, the Individual Defendants were acting (a) at the express direction of, and/or (b) with the consent of and/or (c) under the control and supervision of, and/or (d) within authority as an agent of Defendant BHMCA and/or KW Property Management.

245.    The conduct of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, in discriminating and retaliating against Plaintiff due to her race and sex, was intentional.

246.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

247.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant,  award compensatory damages, punitive damages (as against Defendants BHMCA Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 3**
**Discrimination in Property on the Basis of Race and Sex**
**42 U.S.C. § 1982**
**[GOOD FAITH ARGUMENT FOR EXTENSION,**
**MODIFICATION OR REVERSAL OF LAW]**
**[As to All Defendants]**

248.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

249.    Under Section 1982 of the Civil Rights Act of 1866, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C § 1982.

250.    Defendants' actions did not accord Plaintiff the right to purchase, lease, or otherwise hold or convey real property as is enjoyed by other citizens.

251.    Defendants' actions did not accord Plaintiff the right to purchase, lease, or otherwise hold or convey real property as is enjoyed by white citizens.

252.    Defendants' actions constituted a disparity in treatment between Plaintiff and other citizens, including white citizens, in regard to purchase, lease, or otherwise holding or conveying real property.

253.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, were because of and motivated by Plaintiff's race and sex.

254.    The discriminatory actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, facially based on sex, were motivated by race.

255.    Because of Plaintiff's race, she was considered a gender non-conforming female.

256.    The discriminatory actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, were intentional.

257.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, excluded the Plaintiff from enjoying an environment free from a hostile and intimidating environment based on race.

258.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, retaliated against Plaintiff for making reasonable and good faith complaints about her right to purchase, lease, or otherwise hold or convey real property.

259.    Defendants BHMCA and KW Property Management, as the owners and operators of the property, are liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 because, at all times relevant hereto, the Individual Defendants were acting (a) at the express direction of, and/or (b) with the consent of and/or (c) under the control and supervision of, and/or (d) within authority as an agent of Defendant BHMCA and/or KW Property Management.

260.    The conduct of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, in discriminating and retaliating against Plaintiff due to her race and sex, was intentional.

261.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

262.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant,   award compensatory damages, punitive damages (as against Defendants BHMCA Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

## COUNT 4
### Conspiracy to Deny Equal Protection
### of the Laws on the Basis of Race and Sex
### 42 U.S.C. § 1985(3)
### [As to all Defendants]

263.   Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

264.   Under Section 1985(3) of the Civil Rights Act of 1866,

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

265.   Upon information and belief, Defendant Brumsted communicated with each of the other Defendants in person, by telephone and by email regarding Plaintiff and the purchase and management of her Unit during the period December 1, 2017 until the filing of this action.

266.   During said communications, upon information and belief, Defendant Brumsted indicated to each other Defendant that Plaintiff was an undesirable owner, and Defendant Brumsted based this conclusion on his bias regarding her race and sex.

267.   Upon information and belief some of these communications occurred on dates including but not limited to February 12, 2019, July 15, 2019, August 1, 2019, October 17, 2019, October 22, 2019, December 12, 2019, December 16, 2019, and December 30, 2019.

268.   Defendants Brumsted and Vidal, and through them the Corporate Defendants, and on information and belief the other Individual Defendants, each were aware of statements and actions by other Defendants regarding Plaintiff's race and sex.

269.   Upon information and belief, the communications of all Defendants with one another on the dates specified in this Count included communications regarding Plaintiff's race and sex.

270.   Upon information and belief, communications of all Defendants with one another on the dates specified in this Count included communications regarding Plaintiff's complaints regarding discrimination based on race and sex.

271.   In these communications, upon information and belief, each Defendant conspired with at least one other Defendant to deprive Plaintiff of the equal protection of the laws and equal privileges and immunities of citizens, as set forth above in detail.

272.   Defendants' conspiracy was because of and motivated by Plaintiff's race and sex.

273.   Defendants' conspiracy was designed and intended to interfere with Plaintiff's right to purchase property, engage in contracts, enjoy her property without unreasonable interference, and to be free from harassment and discrimination based on race and sex.

274.   Acts in furtherance of the conspiracy were committed by one or more Defendants.

275.   Each Defendant was aware of at least one act in furtherance of the conspiracy.

276.    Plaintiff was injured in her person and property as a result of these acts in furtherance.

277.    Defendants' discriminatory actions facially based on sex were motivated by race.

278.    Because of Plaintiff's race, she was considered a gender non-conforming female.

279.    Defendants engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

280.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant, award compensatory damages, punitive damages (as against Defendants BHMCA, Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 5**
**Action for Neglect to Prevent Conspiracy**
**to Deny Equal Protection of the Laws on the Basis of Race and Sex**
**42 U.S.C. § 1986**
**[As to all Defendants]**

281.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

282.    Under Section 1986 of the Civil Rights Act of 1866,

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented …

283.    Upon information and belief, each Defendant had knowledge that other Defendants conspired to commit wrongs mentioned in 42 U.S.C. § 1985.

284.    Upon information and belief, each Defendant had power to prevent or aid in preventing the commission of these wrongs.

285.    Each Defendant could have prevented such wrongful acts from occurring by reasonable diligence.

286.    Each Defendant neglected to take action to prevent or aid in preventing the commission of these wrongs.

287.    On the contrary, the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, actively participated in, condoned and/or ratified these wrongs.

288.    As a direct and proximate result of Defendants' neglect to take action to prevent or aid in preventing the commission of these wrongs, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant, award compensatory damages, punitive damages (as against Defendants BHMCA, Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

## COUNT 6
### Discrimination in Housing on the Basis of Race and Sex
### Supplemental Claim - Fl. St. 760.01, et seq.
### [As to all Defendants ]

289.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

290.    Plaintiff is a member of a protected category with regard to race.

291.    Plaintiff is a member of a protected category with regard to sex.

292.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants,  instituted, participated in, were aware of, condoned and/or ratified a campaign of harassment and discrimination because of and motivated by race and sex in violation of Fl. St. 760.07 and Fl. St. 760.23(2).

293.    This harassment was related to and in connection with the availability, sale, rental, and use or enjoyment of Plaintiff's dwelling, and the terms, conditions, and privileges of the sale and rental thereof, and the provision and enjoyment of services and facilities, and the availability, terms, and conditions of a residential real estate-related transaction.

294.    Plaintiff was targeted for harassment by the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants,  because of her race and sex.

295.    Defendants Brumsted and Vidal made statements regarding Plaintiff that were derogatory based on her race and sex

296.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, acted in concert with Defendants Brumsted and Vidal to perpetuate, condone and/or ratify the hostile environment based on race and sex.

297.    This harassment was and is severe and pervasive.

298.    This hostile environment unreasonably interfered with Plaintiff's reasonable enjoyment of her property.

299.    The hostile environment began at the time Plaintiff sought to purchase the unit, and continued after her purchase to the present time.

300.    The effects of the hostile environment alleged herein were pervasive because they were felt by Plaintiff daily. Plaintiff felt daily humiliation and despair as a result of her reasonable fear of continued harassment at any moment.

301.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, occurred because of Plaintiff's race and sex.

302.    The actions of the corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, also occurred because of retaliation for Plaintiff's reasonable and good faith complaints of discrimination.

303.    The corporate Defendants and Defendants Brumsted and Vidal, and on information and belief the other Individual Defendants, acted intentionally or in a manner deliberately indifferent to the rights of Plaintiff.

304.    Defendants BHMCA and KWMP, as the owner and operator of the property, respectively, are liable for the violation of Plaintiffs' rights because, at all times relevant hereto, Defendants Charles Brumsted and Jose Vidal were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of these Defendants.

305.    Defendants Brumsted and Vidal are liable for the violation of Plaintiff's rights because of their discriminatory and harassing behavior towards Plaintiff.

306. Upon information and belief the other Individual Defendants are liable for the violation of Plaintiff's rights because of their acting in concert with Defendants BHMCA, KWPM, Brumsted and Vidal to tolerate, perpetuate, ratify and condone the harassment and discrimination, of which they were aware and in which they participated.

307. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff incurred damages including but not limited to humiliation, loss of enjoyment of life, emotional distress, damage to her reputation, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each Defendant, award compensatory damages, punitive damages (as against Defendants BHMCA, Brumsted, KWPM and Vidal), declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

## COUNT 7
### Violation of Rights of Condominium Owner
### Supplemental Claim - Fl. St. 718.101, et seq.
### [As to Defendant Charles Brumsted, Jr.]

308. Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

309. On December 9,10, 2019 and before, Plaintiff properly submitted, in writing, to BHMCA Miami Condominium Association, Inc. her requests for certain documents and records.

310. BHMCA did not respond to Plaintiff's requests for documents and records, and has not made the same available to her for inspection in violation of Fl. St. 718.111(12)(b) and (c).

311. Plaintiff and various attorneys have followed up with BHMCA multiple times demanding the documents and records.

312.    BHMCA refused to tender or make available for inspection the items requested.

313.    Months after the request, the management company sent an email on January 30, 2020, indicating that documents could be reviewed, but not specifying the means of access.

314.    Pursuant to the BHMCA Bylaws: "A Unit Owner who is denied access to official records is entitled to the actual damages or minimum damages for the Association's willful failure to comply. Minimum damages shall be $50 per calendar day up to 10 days, the calculation to begin on the 11th working day after receipt of the written request. The failure to permit inspection of the Association records as provided herein entitles any person prevailing in an enforcement action to recover reasonable attorney's fees from the person in control of the records who, directly or indirectly, knowingly denied access to the records."

315.    Defendant Brumsted is the President of BHMCA, and is and was in control of the records requested.

316.    Defendant Brumsted denied Plaintiff access to such records.

317.    Defendants Brumsted BHMCA are in breach of the BHMCA Bylaws.

318.    It has been determined by the Florida Department of Business and Professional Regulation that "the Division has determined that the Association is in violation for failing to provide access, and we are moving forward with requesting Administrative Actions".

WHEREFORE, Plaintiff, Ms. Kanayo Derhem requests this Court enter judgment against Charles Brumsted, Jr., award damages of five hundred dollars, award attorneys' fees and costs, and for any and all other relief this Court deems just and proper.

**COUNT 8**
**Violation of Rights of Condominium Owner**
**Supplemental Claim - Fl. St. § 718.303.**
**[As to Defendants BHMCA, Charles Brumsted, Jr., James Pinkert,**
**Alejandro Enrique Utrera Badenes, and Joshua Paul (Separately)]**

319.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

320.    The BHMCA Bylaws and Florida Statutes, Fl. St. 718.303(3)(b) and (4)-(6) afford Plaintiff the right to be heard before the committee prior to entering fines against her.

321.    As set forth above, Plaintiff was not given a chance to be heard by the committee prior to entering fines against her in violation of said statutes.

322.    BHMCA, Charles Brumsted, Jr., the BHMCA Fining/Grievance Committee members, and Ferreira acted in bad faith, jointly and severally as alleged maliciously, illegally, willfully, intentionally, and knowingly breaching the BHMCA Bylaws and Florida Statutes by refusing to allow Plaintiff and opportunity to be heard and entering various fines against her.

323.    As a result of the actions by the Defendants, Plaintiff suffered damage in the form of fees, fines, liens, attorneys' fees and costs, and emotional distress.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each respective Defendant James Pinkert, Alejandro Enrique Utrera Badenes, and Joshua Paul, award damages in the amount of the total amount of fines entered against her, punitive damages, attorneys' fees and costs, and for any and all other relief this Court deems just and proper.

**COUNT 9**
**Violation of Rights of Condominium Owner**
**Supplemental Claim - Fl. St. § 760.37**
**[As to Defendants BHMCA, Charles Brumsted, Jr., James Pinkert,**
**Alejandro Enrique Utrera Badenes, and Jonathan Ferreira (Separately)]**

324.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

325.    It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37. This section may be enforced by appropriate administrative or civil action.

326.    Defendant Brumsted continuing his discriminatory actions and policies targeting Plaintiff, facilitated the appointment of and/or acted in concert with James Pinkert, Joshua Paul, and/or Alejandro Enrique Utrera Badenes on the BHMCA Fining/Grievance Committee for sole purpose of continuing his coercing, intimidating, threatening, and interfering with Plaintiff's rights under Florida Statute 760.23(2), his scheme of discrimination against Plaintiff, and his retaliation against Plaintiff for her previous reasonable good faith attempts to exercise her rights.

327.    Plaintiff's numerous requests to be a member of this committee was ignored by Mr. Brumsted and Mr. Vidal.

328.    As set forth above, Defendants Ferreira, Pinkert, Paul, and Badenes attended a BHMCA Grievance/Fining Committee Hearing on March 20, 2020, which was to determine the entry of certain discriminatory fines against Plaintiff.

329.    At such meeting, and at the direction of Defendant Brumsted, Defendant BHMCA and, upon information and belief, Defendants Pinkert, Paul, Badenes and Ferreira did intentionally, tortuously, and illegally interfere, coerce, intimidate, threaten, and interfere with Plaintiff's exercise of her rights under the Florida Fair Housing Act, Fl. St. 760.37 by imposing unlawful and discriminatory fines against Plaintiff.

330.    Ferreira further aggressively counseled the BHMCA Fining/Grievance Committee on the Bylaws and Florida law, soliciting, aiding and abetting in the imposition of the fines, in an effort to ensure that Plaintiff could not, and did not exercise her rights.

331.    Brumsted, and upon information and belief the BHMCA Fining/Grievance Committee members and Ferreira, acted in bad faith, jointly and severally, as alleged above for discriminatory purposes.

332.    As set forth above, BHMCA asserted liens against Plaintiff on false pretenses.

333.    This includes, but is not limited to the April 9, 2020 Notice of Intent to Record a Claim of Lien citing unpaid Maintenance & Special Assessments, though plaintiff had already paid these.

334.    The unpaid items listed as delinquent are the illegal and discriminatory fines imposed on Plaintiff.

335.    Fla. Stat. 718.303 expressly states "The association may levy reasonable fines for the failure of the owner of the unit or its occupant, licensee, or invitee to comply with any provision of the declaration, the association bylaws, or reasonable rules of the association. *A fine may not become a lien against a unit*."

336.    The Notice of Intent to Record a Claim of Lien is illegal and part of the greater discriminatory scheme.

337.    Plaintiff has been forced to retain counsel and suffered damages as a result of the above stated events.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each respective Defendant, BHMCA Condominium Association, Inc., Charles Brumsted, Jr., James Pinkert, Joshua Paul, Alejandro Enrique Utrera Badenes, and Jonathan Ferreira, award compensatory damages, punitive damages, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 10**
**Violation of Rights of Condominium Owner**
**Supplemental Claim - Fl. St. §§ 718.110, 718.303 and 718.123**
**[As to Defendant BHMCA]**

338.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

339.    Prior to purchasing her condominium, Plaintiff verified with BHMCA that rentals to guest roommates, such as those through Airbnb, were permitted.

340.    Plaintiff's was contingent on rentals being permitted.

341.    BHMCA affirmed that Plaintiff could rent her prospective unit via Airbnb on two separate occasions.

342.    Nothing in any BHMCA governing document or regulation prohibited such renting to guest roommates.

343.    After Plaintiff purchased her condominium unit in reliance on the representations and governing documents pertaining to rentals, BHMCA adopted new Rules and Regulations prohibiting "Airbnb" rentals.

344.    The Rules and Regulations prohibiting "Airbnb" rental materially and adversely affected Plaintiff's rights in violation of Florida Statute 718.110.

345.    Following its bad faith, illegal adoption of the Rules and Regulations, BHMCA illegally deactivated Plaintiff's key fob, denying her access to certain amenities and common areas, citing the imposition of fines for violating the newly adopted prohibition on "Airbnb" rentals.

346.    The illegality of the actions referenced above aside, the fines were not ninety days delinquent, making the denial of Plaintiff's access to common areas and amenities a violation of Florida Statute 718.303 and BHMCA's governing documents.

347.    Plaintiff has been damaged and suffers denial of her use and enjoyment of the property, and has been forced to retain counsel concerning such matters.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against BHMCA, award compensatory damages, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 11**
**Breach of Fiduciary Duty**
**Supplemental Claim under Florida Common Law**
**[As to Defendant Charles Brumsted, Jr.]**

348.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

349.    Pursuant to Florida Statute 718.111 Charles Brumsted, Jr., as its President, owed BHMCA and its unit owners a fiduciary duty.

350.    Charles Brumsted, Jr. breached his fiduciary by intentionally and willfully acting and directing others, in bad faith, to engage in illegal, fraudulent, malicious, discriminatory, and grossly reckless behavior under the color of authority granted by the BHMCA

351.    Charles Brumsted, Jr. misappropriated association funds and resources for his own benefit relating to prior claims of his misconduct regarding unit owners, association officials, employees, staff and Plaintiff.

352.    Charles Brumsted, Jr. deliberately failed to keep and make available records and documents required by Florida law and BHMCA Governing documents.

353.    Charles Brumsted, Jr. implemented and executed the selective and specific application of BHMCA powers and authority to disproportionately target Plaintiff in retaliation for her previous disagreements, desire to be a board member; desire to participate in community activities; inquiries, reasonable and good faith complaints, etc., and to satisfy his own racial/ discriminatory biases because of her African American ethnicity and gender expression and identity.

46

354.    The totality of Charles Brumsted, Jr.'s actions are reckless, in bad faith, with malicious purpose, wanton, and with willful disregard of human rights, safety, and property.

355.    Charles Brumsted, Jr.'s breaching of his fiduciary duty is the direct and proximate cause of irreparable damages suffered by Plaintiff has been forced to retain counsel as a result of Charles Brumsted, Jr.'s breach.

   WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against Charles Brumsted, Jr., award compensatory damages, punitive damages, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

## COUNT 12
### Breach of Fiduciary Duty
### Supplemental Claim under Florida Common Law
### [As to Defendants James Pinkert, Joshua Paul and
### Alejandro Enrique Utrera Badenes (Separately)]

356.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

357.    Pursuant to Florida Statute 718.111 James Pinkert, Joshua Paul, and Alejandro Enrique Utrera Badenes, as members of the BHMCA Fining/Grievance Committee, owed BHMCA and its unit owners a fiduciary duty.

358.    Each BHMCA Fining/Grievance Committee member was recruited and placed on the BHMCA Fining/Grievance Committee by, and at the direction of Charles Brumsted, Jr., BHMCA President, and/or acted in concert therewith, for sole purpose of carrying out and furthering Charles Brumsted, Jr.'s scheme to illegally retaliate, coerce, intimidate, threaten, deny Plaintiff the exercise of her rights, and deny her human rights.

359.    Each BHMCA Fining/Grievance Committee member did breach their fiduciary duties by intentionally and willfully acting in bad faith, to engage in illegal, fraudulent, malicious, grossly

reckless behavior, and upon information and belief, discriminatory acts, under the color of authority granted by the BHMCA

360.    Each BHMCA Fining/Grievance Committee member imposed and executed the selective and specific application of BHMCA powers and authority to disproportionately target Plaintiff, upon information and belief, in retaliation for her previous disagreements, reasonable and good faith complaints, and decision to run for the board, *inter alia*, and in furtherance of Charles Brumsted, Jr.'s, and, upon information and belief, their own respective racial biases because of her African American ethnicity.

361.    Each BHMCA Fining/Grievance Committee member deliberately imposed illegal fines against Plaintiff recklessly, in bad faith, with malicious purpose, wanton, and, upon information and belief, with willful disregard of human rights, safety, and property.

362.    These acts were arbitrary and capricious, because they were not properly based on the BHMCA rules, and in bad faith because they were based on Plaintiff's race and sex.

363.    Each BHMCA Fining/Grievance Committee member's breaching of their fiduciary duty is the direct and proximate cause of irreparable damages suffered by Plaintiff has been forced to retain counsel as a result of the breach by the then-members of the BHMCA Fining/Grievance Committee.

> WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each respective Defendant, James Pinkert, Joshua Paul, and Alejandro Enrique Utrera Badenes, award compensatory damages, punitive damages, declaratory and injunctive relief as specified at the end of this Complaint in the Prayer for Relief, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

**COUNT 13**
**Gross Negligence**
**Supplemental Claim under Florida Common Law**
**[As to Defendants James Pinkert, Joshua Paul and**
**Alejandro Enrique Utrera Badenes (Separately)]**

364.    Plaintiff incorporates by reference the paragraphs set forth in Section V as if set forth herein.

365.    Each and every one of the Defendants; James Pinkert, Joshua Paul, and Alejandro Enrique Utrera Badenes owed Plaintiff, Kanayo Derhem, a duty to execute their duties and responsibilities as members of the BHMCA Fining/Grievance Committee legally, ethically, fairly, impartially, and pursuant to governing documents of BHMCA.

366.    Defendants, James Pinkert, Joshua Paul, and Alejandro Enrique Utrera Badenes, upon information and belief, willfully and intentionally accepted appointment to BHMCA Fining/Grievance Committee by and/or acted in concert with, BHMCA President Charles Brumsted Jr., for the sole purpose of, with instruction, understanding, and intent of, maliciously continuing Defendant Brumsted Jr.'s coercing, intimidating, threatening, interfering, and deprivation of Plaintiff's rights under Florida Statute 760, his scheme of discrimination against Plaintiff, and his retaliation against Plaintiff for her previous attempts to exercise her rights.

367.    The BHMCA Fining/Grievance Committee acting on behalf of BHMCA on March 20, 2020, with 2 (two) newly appointed members, Alejandro Enrique Utrera Badenes, and Joshua Paul, imposed the fines against Plaintiff.

368.    At the March 20, 2020 hearing, Plaintiff was not afforded the opportunity to be heard because the BHMCA Fining/Grievance Committee incorrectly said she was given the opportunity to be heard at the prior hearing.

369.    Contrary to this assertion, Plaintiff was not given any opportunity to be heard on these new matters at the previous hearing, and she made the BHMCA Fining/Grievance Committee aware of this, and her right to do so under Florida law.

370.    Despite being made aware of these facts and Florida statutes, the BHMCA Fining/Grievance Committee refused to allow Plaintiff to be heard, refused to take any meeting minutes of the March 20, 2020 hearing, and entered all fines against Plaintiff.

371.    The BHMCA Bylaws and Florida Statutes afford Plaintiff the right to be heard before the committee prior to entering fines against her.

372.    The BHMCA Fining/Grievance Committee members acted in bad faith, jointly and severally as alleged maliciously, illegally, willfully, intentionally, and knowingly breaching the BHMCA Bylaws and Florida Statutes by refusing to allow Plaintiff and opportunity to be heard and entering various fines against her.

373.    Each BHMCA Fining/Grievance Committee member imposed and executed the selective and specific application of BHMCA powers and authority to disproportionately target Plaintiff, upon information and belief in retaliation for her previous disagreements, complaints, and decision to run for the board, *inter alia*, and, upon information and belief, in furtherance of Charles Brumsted, Jr.'s, and their own respective racial biases because of her African American ethnicity.

374.    Each BHMCA Fining/Grievance Committee member, upon information and belief, deliberately imposed illegal fines against Plaintiff recklessly, in bad faith, with malicious purpose, wanton, and with willful disregard of human rights, safety, and property.

375.    These acts were arbitrary and capricious, because they were not properly based on the BHMCA rules, and in bad faith because they were based on Plaintiff's race and sex.

376.    Thus, each BHMCA Fining/Grievance Committee member did breach the duty owed to Plaintiff by intentionally and willfully acting in bad faith, to engage in illegal, fraudulent, malicious, and grossly negligent behavior, and upon information and belief discriminatory behavior, under the color of authority granted by the BHMCA

377.    Each BHMCA Fining/Grievance Committee member's breaching of the duty is the direct and proximate cause of irreparable damages suffered by Plaintiff in the form of fines, liens, emotional distress, and having been forced to retain counsel as a result of the Committee's breach. Despite being made aware of these facts and Florida statutes, the BHMCA Fining/Grievance Committee refused to allow Plaintiff to be heard, refused to take any meeting minutes of the March 20, 2020 hearing, and entered all fines against Plaintiff.

378.    The actions of each Committee member were grossly negligent.

WHEREFORE, Plaintiff, Kanayo Derhem, requests this Court enter judgment against each respective Defendant, James Pinkert, Joshua Paul, and Alejandro Enrique Utrera Badenes, award compensatory damages, punitive damages, declaratory and injunctive relief as specified in the Prayer for Relief below, attorneys' fees and costs, and any and all other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare that the acts, practices, and omissions complained of herein by each Defendant are unlawful and violate the Federal Housing Act, the Federal Civil Rights Act of 1866 and

1871, the Florida Civil Rights Act, the Florida Fair Housing Act and the Florida Condominium Act, and constitute the state law tort of breach of fiduciary duty;

B.      Permanently enjoin Defendants BHMCA and KWPM, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in the unlawful conduct of discriminating against residents based on race and sex;

C.      Order Defendants BHMCA and KWPM to institute and carry out policies, practices, programs, and training for employees which eradicate the effects of Defendants' past and present unlawful housing practices;

D.      Order other affirmative relief necessary to eradicate the effects of the unlawful housing practices of Defendants BHMCA and KWPM;

E.      Direct all Defendants to pay for past and future compensatory pecuniary and non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

F.      Direct Defendants BHMCA and Brumsted to pay punitive damages;

G.      Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law; and

H.      Award such additional relief as justice may require.

Dated: August 14, 2020

                                        Respectfully submitted,


                                        ____s/ Marlin S. Muller_____
                                        Marlin Muller
                                        Bar No. 1003675
                                        The Hidalgo Law Firm
                                        25 SE 2nd Ave Suite 1235
                                        Miami, FL 33131
                                        (305) 846-9192
                                        marlin@thehidalgolaw.com

      s/ Jillian T. Weiss_____

Jillian T. Weiss, Esq.
Pro Hac Vice
Law Office of Jillian T. Weiss, P.C.
442 15th Street No. 1R
Brooklyn, New York 11215
(845) 709-3237
jweiss@jtweisslaw.com

*Attorneys for the Plaintiff*