IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-CV-22318-KMW

Ms. KANAYO DERHEM and
Mr. MOJTABA E. KOOSEJ,

      Plaintiffs,

v.

BAY HOUSE MIAMI CONDOMINIUM
ASSOCIATION, CHARLES BRUMSTEAD,
JR., JAMES PINKERT, JOSHUA PAUL,
ALEJANDRO ENRIQUE UTRERA BADENES,
JONATHAN FERREIRA, K W PROPERTY
MANAGEMENT, LLC and JOSE VIDAL,

      Defendants.
_____/



FILED BY _____ D.C.
OCT 14 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFFS' REVISED RESPONSES TO DEFENDANTS STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL FACTS

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. **Disputed.** Ms. Derhem and Mr. Koosej always intended to purchase unit 2605. Both Plaintiffs completed Applications for Occupancy with the Association. *See Doc. 214-11 at BHMCA 000121-000127*, which includes Mr. Koosej's annual income records. *See Koosej's Affidavit, Exhibit A, at ¶ 3*.
5. **Disputed.** The joint application of Mr. Koosej and Ms. Derhem, *Doc. 214-11*, includes income records reflecting income in 2019 of $251,344, *BHMCA 000127, D*. The implication that financing was ever solely dependent on Ms. Derhem's income is incorrect *See Ex. D at par.28;215*.
6. **Disputed.** Maintenance fees have increased; maintenance fees are currently well over $1,000 per month. See payment history, *Exhibit B at page 2*.
7. **Disputed.** At all relevant times Mr. Koosej, together with Ms. Derhem, were applicants for purchase of Unit 2605. *See Defendants' Exhibit 11 at BHMCA 000121-000127, Doc. 214-11*.

1

Income records reflect an annual income of $251,344. The application for Association approval was never contingent on Ms. Derhem's income alone. Moreover, Ms. Strang advised BHMCA and Brumsted that the loan with two buyers (Koosej and Derhem) had been approved pursuant to the purchase of their unit and that BHMCA and Brumsted's approval was the only thing missing *See Exhibit C (entire document) also See Ex. D at par. 28 and 215*

8. **Disputed.** It is not disputed that Mr. Brumsted interviewed Plaintiffs immediately upon receiving an email from Ms. Strang, threatening litigation and suggesting that the delay in processing Plaintiffs' application was based on discrimination *See Exhibit C, at page 2*. Immediately following receipt of that email from Strang, an interview was scheduled between Plaintiffs and Brumsted *See Koosej Affidavit, Exhibit A at ¶ 6*. No proof of hospitalization has ever been offered to substantiate Mr. Brumsted's claims of purported hospitalization *Exhibit D, p. 7, ¶ 43*. The fact that the interview was only scheduled immediately upon receipt of Ms. Strang's email claiming discrimination suggests that Brumsted's defensive explanation is pretextual.

9. **Disputed.** Official approval took 25 days *See Exhibit R*. As discussed in eight, above, as referenced in Ms. Strang's email, *Exhibit C at page 2*, Plaintiffs' repeated inquiries regarding the pending application were ignored by BHMCA and Brumsted. Clearly, the delay(s) in communicating with the Plaintiffs is attributable to Ms. Derhem's race and transgender identity as Brumsted only agreed to meet with Plaintiffs following Strang's accusations of discrimination. Moreover, defendants admit that *See Ex 214-14 page 3 at paragraph 13*: "The Association does not keep record of the dates on which unit owners close on their respective units"; without such records, the defense simply cannot substantiate their claim that: "the approval was within the same time frame for all other purchasers during the one-year period prior to Plaintiffs' purchase." Moreover, *Ex 214-14* contains falsehoods— the defense asserts BHMCA terminated KWPM; however, KWPM withdrew from BHMCA upon such alleged accusations of sexual misconduct against Brumsted *See Ex 214-14 page 3 at paragraph 16 ; See Exhibit S; See Exhibit D at Par. 40(f)(g) and at par 102, 105, 106, 148, 196, 203, 246 ; Exhibit T pages 53-56.*. Moreover, Mr. Brumsted, himself, contemporaneously, detailed that the approval time would only take 20 days; 25 days, therefore, is more than the 20 days Brumsted, himself, quoted *See Exhibit U*.

10. **Disputed** There is more content, nuance and context with regard leasing; for example, *See Guest Policy and leasing details presented therein (Def. at par. 12)*. Although these are the contents of this specific section within the declaration, the occupation of roommates within an

2

owner-occupied unit is clearly contemplated and not prohibited by the declaration. As Mr. Michael Rehr, ESQ, the author of this same declaration states: "I think the condo cannot tell you who you can have as a roommate except for a person that is ineligible to live in the building for some other reason (like a felony conviction if that is an express restriction), or if he/she has a pet in a no-pet building). If you are a member of a protected class, the condo's refusal may be a pretext for discrimination." Furthermore, the rental(s) of resident/owner-occupied units is clearly contemplated, outlined, and permitted by the Declaration *See Exhibit V Page 164, 2 and 162.*

11. **Disputed.** Plaintiffs concede they are just like any other unit, subject to BHMCA rules and regulations. However, Plaintiffs maintain the disparate application and enforcement of the rules due to race and sex-based animus is unlawful. Plaintiffs dispute ¶11's implication that BHMCA's rules and regulations were somehow applied equally and evenly without undue race and sex-based discrimination *See Exhibit D at par 67(d)(g), par. 322, par 7, par. 39, par. 61, par 66, par 82, par 174, par. 263, par. 321.*

12. **Disputed**. The guest policy in this context, is not "of relevance" *See Plaintiffs responses to #10 and #11 above*. Plaintiffs were almost exclusively in the presence of their guests—in perpetuity. Guests (staying for 21 days or less) do not require registration unless the owner is not in residence; and, if over 21 days in the presence of the owner, are automatically considered a "lessee" *See Exhibit 214-15, Page 8, Section 44*. Several fines levied against Plaintiffs were for "Guests". For example, Derhem was fined, slandered, and harassed when BHMCA/KWPM called the police on Derhem for having her nail technician at her home *See Exhibit W*. Ms. Derhem's nail technician was carrying a small case with her materials to perform her services. BHMCA presumed falsely, that Derhem's nail tech was an "illegal renter" as Brumsted often said. On the false presumption alone, BHMCA and KWPM fined Plaintiffs for "illegal renters" and called the police to Plaintiffs' home to have the nail tech removed. As noted by Derhem's contemporaneous email, BHMCA and KWPM's efforts to discriminate were relentless and "dangerous" *See EX: D at page 46 at par. 305, and 306.*

13. **Disputed.** Neither BHMCA nor KWPM "uniformly enforces violations against all unit owners and residents alike." Other residents not sharing Ms. Derhem's racial and transgender identity, were permitted – even assisted – by Mr. Brumsted and the Association in procuring renters/ roommates *See Affidavit of Mr. Kavir Rambharat, Exhibit E; Affidavit of Sebastian Brayshaw, Exhibit F; Affidavit of Kanayo Derhem, Exhibit. D, page 5, ¶¶ 35-39*. Moreover,

3

BHMCA has not placed fraudulent liens against any other unit that was not owned by someone who is both Black and Transgender *See Exhibit D at Par. 208, at Par. 210, at Par. 223-224.* Derhem was denied concierge services *See Exhibit O*. No other unit not owned by someone who is black and/or transgender has been denied such concierge services. The record is devoid of any evidence that occupancy of units by other owners/ residents with roommates were ever subjected to such malicious harassment, fines, & denied access to amenities, as repeatedly occurred during Derhem's Unit occupation *See exhibit D par. 245- par. 274.*

14. **Disputed**. Plaintiffs sought BHMCA approval for their roommates and were denied, ignored, or told blatantly that such roommate rentals were prohibited *See Exh Y at P(s). 2 and 3*. Plaintiffs do rent their owner-occupied unit to renters. No steps have ever been taken to "partition" the unit in violation of the rules of the Association. Renters are assigned use of specific bedrooms but are not excluded by Plaintiffs from use of common areas within and outside of the unit. Unit owners have access, inter alia, to bathroom facilities; kitchen and balcony areas within the unit and other commonly used portions of the unit. Renters have exclusive use of their assigned bedroom during their occupancy. *Derhem Affidavit, Exhibit D, Pg 2, line 10-14. See also Doc. 214-23 BHMCA000001-000008, Lease between Derhem and Brittany Rogers, at Section II.* , providing that the lease leases to the tenant apartment 600 NE 27th St. 2605 "with the following furniture and appliances: queen bed, tv, internet router, common room furniture, bathroom supplies, kitchen supplies – the premises."

> Roommate affiant, Ms. Paula Pando confirms:
>
> "3. During my occupancy, your Affiant occupied a designated bedroom and had full access to the other areas of the condo including the kitchen, the living room, the balcony and my bathroom. Your Affiant supplied her own linen and cared for her own bedroom.
> 4. Throughout your Affiant's occupancy of Unit 2605, your Affiant was not permitted to use building amenities such as the building swimming pool and your Affiant's monthly rent reflected exclusion from building amenities.
> 5. At the commencement of my occupancy of Unit 2605, your Affiant with Ms. Derhem's assistance, were unsuccessful in our attempted to submit an application for occupancy to BHMCA." *See EX: G*

15. **Disputed**. Plaintiffs leased the apartment premises – not limited to a single room – as is reflected in the response to #14 supra. Koosej was the sole owner of Luxairbnb LLC and, as the owner of that entity, he facilitated the roommate transactions and the payments therein. No rules prohibit the use of an entity to facilitate commercial transactions *See Exhibit E at par. 7*

4

*also see Ex D at Par 24, 25 and 26.* Koosej's entities had many limited and non-member representatives also authorized to sign on behalf of his entity, Luxairbnb LLC.

16. **Disputed.** Plaintiffs were leasing their unit for co-occupancy by renters/ roommates. *See Responses to #14 and #15, supra; see Rogers Lease agreement, Doc. 214-23 BHMCA000001-000008, at Section II (first page); See Nicole Dean Roommate Agreement D.E 214-36.*

17. **Disputed.** *See response to #19 (below).*

18. **Disputed.** Plaintiffs submitted multiple documents to BHMCA regarding, Brittany Rogers. Plaintiffs submitted rental documents to BHMCA and were denied and/or refused. Following their refusal to accept Rogers' rental application, Derhem submitted a visitor application and paid $50 to reserve the elevator upon her move-into the unit indicating Rogers' arriving on 4/24/19. Defense signed the document in agreement and accepted the payment. On her arrival, BHMCA fined Plaintiffs for Rogers use of the service elevator despite Plaintiffs' payment and defense's acceptance *See EX 214-25 and See Exhibit D at Par. 10 and 11.*

19. **Disputed.** Plaintiffs recognize that a violation was issued. BHMCA on 3/11/21 refunded thousands of dollars of fines that were fraudulently levied against Plaintiffs. By and through the refund of these fines, the defense admits to the fraudulent nature of their initial fines *See Exhibit Z entire document, See Exhibit D at Paragraphs 7, 61, 66, 130, 153, 320, 321.*

20. **Disputed.** *Defendants' Exhibit 27, Doc. 214-27, BHMCA000554-000559,* reflects that because of Board activity on April 24, 2019, Ms. Derhem's rights to use building amenities would be suspended on May 21, 2019. The exhibit demonstrates the illegality of the actions of the Board, as pursuant to the Bylaws of the Association and FL State Law, an owner's right to use and access to building amenities could only be suspended if delinquency in payment of a monetary obligation to the Association remained unpaid for a period of ninety days. *See Bylaws of Bay House Miami Condominium Association, Inc., Defendants' Exhibit 1, at Section IX (a), at BHMCA000400, Doc. 214-1, BHMCA000242-000401 also See Ex. D at Par. 63, 274*

21. **Disputed.** *See response to #19 above.*

22. **Disputed.** No hearing notice is among the multiple documents comprising Defendants' Exhibit 28, *Doc. 214-28, BHMCA000406 , BHMCA000525, BHMCA000526; See response to #19 above.*

23. **Disputed.** *See response to #19 above.*
24. **Disputed.** *See response to #19 above.*
25. **Disputed.** *See response to #19 above.*

26. **Disputed.** *See response to #19 above.* Moreover, there is no reference to Unit 3202 in Board minutes of October 22, 2019.
27. **Disputed.** *See response to #19 above.* Moreover, the incident report appended to Exhibit 32 is inadmissible hearsay.
28. **Disputed.** *See response to #19 above.* Moreover, the incident report appended to Exhibit 33 is inadmissible hearsay.
29. **Disputed.** *See response to #19 above.* Moreover, the incident report appended to Exhibit 34 is inadmissible hearsay.
30. **Disputed.** Undisputed that the agreements referenced in the Statement of Facts were executed. Disputed that the Association and Management Company were willing to review in good faith occupancy applications of renters of Unit 2605. *See, e.g., Exhibit G, Affidavit of Paula Pando. See Exhibit D, page 2, ¶s 10, 11, 12, 13.* Moreover, *Exhibit 36* supports Plaintiffs' position that they were in perpetual pursuit of roommate relationships and contracts.
31. **Disputed.** *See response to #19 above.* Although the fining committee approved the subject fines, the Association and Management Company were never willing to entertain occupancy applications from potential renters of Unit 2605. *See, e.g. Exhibit G, Affidavit of Pando*
32. **Disputed.** Although the correspondence of November 6, 2019 was sent, plaintiffs dispute that access to amenities were suspended on November 6, 2019. According to the letter, access to amenities was to occur if the imposed fines were not paid within "five days". As set out in response to Statement of Facts #20, above, this letter is an additional illustration of the behavior of the Association in terminating access to amenities for failure to pay a financial obligation to the Association which has been pending for less than ninety (90) days in violation of the Bylaws of Bay House Miami Condominium Association, Inc and FL State Law. *See Doc. 214-1, at Section IX (a) on BHMCA 000400 also see See FL 720.305(3)(4).*
33. Undisputed, Although Derhem did make such a filing, Derhem dismissed her claims against Ms. Dean. Ms. Derhem is adamant that the inter-personal issues which arose were a direct result of Mr. Brumsted, Mr. Vidal and BHMCA lies and manipulations. Ms. Derhem and Ms. Dean often spoke about the struggles and stress they were facing together due to BHMCA and other defendants depriving them of access to amenities and constant harassment *See Exhibit D at par. 134, 135, 185.*

34. **Disputed.** Plaintiffs sought BHMCA approval for their roommates and were denied, ignored, or told blatantly that such roommate rentals were prohibited *See Exhibit Y Pages 2, 3, 5, 8, 9; See Exhibit D, page 2, ¶s 10, 11, 12, 13 also See Exhibit G at pars. 4 and 5.*
35. **Disputed.** Although there was an incident report drafted, the contents of the report are inadmissible hearsay. Moreover, *See response to #19 above.*
36. **Disputed.** Although The Board imposed a pet related fine on Unit 2605, Plaintiffs dispute that units 1901 and 1105 were fined for pet related violations during the same Board Meeting. Moreover, *See response to #19 above.*
37. **Disputed.** *See response to #19 above.*
38. **Disputed.** Although there was an incident report drafted, the contents of the report are inadmissible hearsay. Moreover, *See response to #19 above.*
39. **Disputed.** Although undisputed that there was an incident report drafted, the contents Exhibit 44 reflect fewer than the three required committee members legally needed in order to implement a fine against the plaintiffs. Moreover, *See response to #19 above.*
40. **Disputed.** Undisputed that a Notice of Hearing for a hearing to be held on March 19, 2020, was provided to Unit 2605. Denied that any fines were imposed on March 5, 2020. *See cited exhibit. See response to #19 above.*
41. **Disputed.** Undisputed that a Notice of Hearing for a hearing to be held on March 19, 2020 was provided to Unit 2605. Denied that any fines were imposed on March 5, 2020. *See cited exhibit. See response to #19 above.*
42. **Disputed.** Undisputed that a Notice of Hearing for a hearing to be held on March 19, 2020 was provided to Unit 2605. Denied that any fines were imposed on March 5, 2020. *See cited exhibit. See response to #19 above.*
43. **Disputed.** Undisputed that a Notice of Hearing for a hearing to be held on March 19, 2020 was provided to Unit 2605. Denied that any fines were imposed on March 5, 2020. *See cited exhibit. See response to #19 above.*
44. **Disputed.** Undisputed that a Notice was sent. *See response to #19 above.*
45. **Disputed.** Undisputed that the subject letter was provided to Unit 2605. Disputed that the fines were legitimately imposed as Ms. Derhem was not permitted to participate in the hearing of March 19, 2020 *See Muller Affidavit, Exhibit H.* The exhibit demonstrates the illegality of the actions of the Board, as pursuant to the Bylaws of the Association, an owner's right to use and

access to building amenities could only be suspended if a delinquency in payment of a monetary obligation to the Association remained unpaid for a period of ninety days. *See Bylaws of Bay House Miami Condominium Association, Inc., Doc. 214-1, at Section IX (a), BHMCA 000400; See FL 720.305(3)(4[1]).* The letter advises that access to amenities would be suspended if the fine in question was not paid in five days. *See response to #19 above.*

46. **Disputed.** Plaintiff in her answers to interrogatory *14, Doc. 214-16,* acknowledges having renters as co-occupants (roommates) during portions of her occupancy in Unit 2605. That interrogatory specifically asks about renters of the unit – not renters confined to a bedroom or roommates. In fact, renters were permitted use and access of the entire apartment as co-occupants/ roommates, while each occupant had use of their own bedroom. *See, e.g., lease agreement of Brittany Rogers, Doc. 214-23, BHMCA000001-000008 ; See Exhibit 214-36; See response to #19 above.*

47. **Disputed.** Ms. Derhem ran for the board using her name as "Kanayo Derhem." The application that BHMCA circulated to petition applicants to run for the board never indicated that the name must match the name on the deed. Moreover, Mr. Joronne Jeter's name was also misspelled and, presumably, the misspelled name did not match the name on Jeter's deed. As the only black candidates, BHMCA and Brumsted purposely misrepresented Ms. Derhem and Mr. Jeter's names *See Exhibit D at par. 171, 279, 291, 170, 278.*

48. Undisputed.

49. Undisputed, although the loss is attributable to Brumsted and BHMCA's ongoing scheme to discriminate and slander Plaintiffs. *See Exhibit D at par. 282*

50. **Disputed.** Although it is true that a consent order was entered, it was entered because BHMCA and Brumsted purposely ignored Derhem's requests so as to perpetuate their discrimination and to prevent Derhem access to records of which Brumsted and BHMCA considered incriminating. *See Exhibit D at par. 141, 317, 318, 319*

51. **Disputed.** According to Defense, BHMCA and KWPM have/ had an agent relationship with BHMCA and, ultimately, BHMCA is/ was responsible for all actions taken by KWPM; therefore, BHMCA is still responsible for the maintenance of records *See D.E. 214-1 page 9 par. 3.*

---

[1] http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0700-0799/0720/Sections/0720.305.html

52. **Disputed.** During 2019 Plaintiffs made substantial assessment fee payments; On 11/5/2019, Vidal sent an email to Derhem confirming a "zero balance" for the account leger *See Exhibit B, Resident Transaction Report, 000008, 000021-23.* Furthermore, all liens for unpaid assessments were either released by the Association or permitted to expire *See Satisfaction of Lien, last document in Exhibit I.* Some payments sent to the Association were not promptly deposited leading to the appearance of delinquent assessment obligations. *See email from Association attorneys, Exhibit J, pp.1-2, acknowledging misplacement and delay in depositing Plaintiffs' payments. See Exhibit D at par. 82, 139, 174, 208, 224, 231, 257, 240, 285, 286.*
53. **Disputed.** Mr. Brumsted had the vehicle towed as "abandoned." Moreover, the vehicle was subject to a statutory usuary violation and Ms. Derhem was in the midst of a private and personal commercial dispute with lender regarding same *See Derhem Aff., Exhibit D, p. 45, ¶¶s 294-299.*
54. **Disputed.** Mr. Brumsted asked questions during the initial interview specifically addressing Ms. Derhem's gender identity *See Derhem Aff., Exhibit D at par. 77, 221, 292, 15, 164, 217.*
55. **Disputed.** Other residents not sharing Ms. Derhem's racial and transgender identity, were permitted – even assisted – by Mr. Brumsted and BHMCA in procuring renters/ roommates. *See Affidavits of Kavir Rambharat, Exhibit E; Affidavit of Sebastian Brayshaw, Exhibit F; Derhem Affidavit, Exhibit D, p. 5, ¶¶s 35-39.*
56. **Disputed** Undisputed, regarding Brumsted's calling Derhem a "monkey" *Exhibit D, p. 9, ¶ 61, 67, 80, 93, 179, 267.* Disputed, however, regarding Brumsted's multiple references to Ms. Derhem as a "disgrace" See *Exhibit D at par. 50, 78, 88, 135, 185 also see Exhibit N at P. 7.*
57. Undisputed, with the qualification that Plaintiffs maintain that there was, indeed, a violation.
58. Undisputed, although the content contained therein is of dispute.
59. Undisputed, although the content contained therein is of dispute.
60. **Disputed.** KWPM terminated its contract due to issues with Brumsted, including, accusations of sexual harassment. Joel Gonzalez and Ms. Grace (last name unknown) advised Derhem of same. *See Exhibit S; See Exhibit D at par. 40(f), 102, 105, 106, 148, 196, 246.*
61. Undisputed.
62. Undisputed.
63. **Disputed.** Ferreira also interacted with plaintiffs by way of letter to plaintiffs confirming the imposition of fraudulent fines *See Exhibit D at par 160-162.*

9

64. **Disputed**. Ferreira's affidavit is not notarized. Vidal, on an occasion when Derhem visited Vidal in his office, confronted Derhem with a pre-transition photograph of Derhem as a man and twisted his face in a disparaging way to suggest Derhem should not run for the board. It was apparent from this interaction that Vidal was aware of Derhem's transgender identity *Derhem Affidavit, Exhibit D, p. 21, ¶ 137, 281*.

## PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS

65. The compensation defense has offered for settlement is supremely insufficient to cover the massive injuries incurred by Plaintiffs. Plaintiffs seek punitive damages *Ex D, P.50, ¶ 327.*

66. Brumsted's claims of hospitalization have yet to be substantiated *Exhibit D, p. 7, ¶ 43*

67. Brumsted is often intoxicated around the BHMCA property; was often intoxicated during times of BHMCA meetings and is known to get verbally belligerent. He was arrested on charges relating to his intoxication. *Derhem Aff., Exhibit. D, p. 7, ¶ 42*

68. Brumsted made false testimony regarding the unlawful deletion of his emails upon knowledge of this lawsuit. Brumsted was aware of this pending lawsuit when he decided to delete his BHMCA email account. *Derhem Aff., Exhibit. D, p. 31, ¶ 207*

69. Siegfried Rivera admitted Plaintiffs' checks had been misplaced and not added to their ledger. Defendants filed fraudulent liens against the Plaintiffs. Every lien ever levied against Plaintiffs' unit has either been released or has expired due to BHMCA's failure to act. *Derhem Aff., Exhibit. D, p. 31, ¶ 209 also See Exhibit B, I, and J (entire documents).*

70. BHMCA has not amended *Declaration @ Section XII, 3, p. 13*. Plaintiffs would not be subject to such a later amendment; Plaintiffs would be grandfathered into the prior rules governing rentals *See FL Statute §718.110(13 & 14) also See Exhibit D at Par. 326.*

71. Charles Brumsted entertained animus and prejudice against transgender people including Ms. Derhem; against blacks; and against Muslims. *See Exhibit K, discriminatory social media posts also See Exhibit D at par. 19*. Brumsted's suspicions that Ms. Derhem was a transgender woman was exhibited during his initial interview with Plaintiffs regarding their joint application for occupancy when he asked Derhem whether she could have children and commenting that the condominium was "family orientated" suggesting that it would not be a good fit for someone like Ms. Derhem. *Derhem Aff., Exhibit D, p. 33, ¶ 221.*

72. Brumsted is unable to justify his Facebook posts as anything other than expressions of discriminatory animus *See Exhibit D at par. 8, 44, 19.*

10

73. A witness, who is currently employed by BHMCA, has come forth and has signed a statement in advance of their impending resignation. This witness, upon their impending resignation, has detailed their intent to be a fact witness at trial. *Their statement is Exhibit X.*

74. Mr. Brumsted's racial animus was further displayed following the December 30, 2019, fining committee meeting. At the conclusion of the meeting, Brumsted chastised Pinkert and Perez for not confirming Board-imposed fines against Ms. Derhem (unit 2605) and during his tirade characterized Ms. Derhem as a "monkey." *Derhem Affidavit, Exhibit D, p. 39, ¶¶s 266, 267, 268, 269; page 9 paragraph 61.*

75. In his affidavit, Defendant Pinkert does not deny the facts presented within the aforementioned paragraph. *Derhem Affidavit, Exhibit D, page 9 paragraph 62*

76. Prior to purchasing their Unit 2605, Plaintiffs confirmed through their realtor that renting an owner-occupied unit to co-inhabitants at Bay House Miami Condominium was not prohibited by the rules and regulations of the Bay House Miami Condominium. *Derhem Affidavit, Exhibit D, p. 2, ¶ 9, 10, 11; Exhibit L emails from Ms. Julia Hall, realtor.*

77. No rule or regulation of BHMCA prohibited the renting of an owner-occupied unit to a third-party co-inhabitant renter (roommate). *Defendants' Exhibit 10, Declaration of Condominium, Sections XIII (b); Section XXI, ¶s 1, 8, 15; Section XXII ¶ 2, Doc. 214-10. Also see Exhibit V.*

78. After assuming occupancy of Unit 2605, BHMCA and KWPM refused to accept applications from potential co-habitant renters of Unit 2605 intentionally precluding compliance with the regulations governing unit rentals. *Derhem Aff, Exh D, p. 2, ¶¶10, 11, 12. See Exhibit G, ¶ 5.*

79. Charles Brumsted, acting as President of the Association, advised Ms. Derhem that she was not permitted to rent her owner-occupied unit to third party co-habitants. *Derhem Affidavit, Exhibit D, p. 13, ¶81, 82, 83; p. 22, ¶142 also See Exhibit Y Pages 2, 3, 5, 8, 9.*

80. Charles Brumsted induced the BHMCA Board of Directors to repeatedly and fraudulently fine Derhem and her unit 2605 for having "illegal" renters. *See Doc. 214-26, minutes of Board meetings, at pp. BHMCA000167- 000170, and BHMCA000180. See Exhibit D, p. 5, ¶ 39.*

81. In contrast to Mr. Brumsted's campaign to prevent rental of unit 2605 to co-inhabitants (roommates), Brumsted assisted other residents in pursuing the same practice, i.e. renting to co-habitants/ roommates. The residents in question were not transgender black females. *See Kavir Affidavit, Exhibit E; Brayshaw Affidavit, Exhibit F; Derhem Affidavit, Exhibit D, page 13, ¶ 81, 82, 83, 84, 85, 86; page 22, ¶s 142, 143; page 23, ¶ 157, 158; page 38, ¶ 261.*

82. Manifestations of racial and gender animus directed by Brumsted toward Kanayo Derhem include unpleasant confrontations with Ms. Derhem in the common areas of the building; *See Affidavit of Michael Brown, Exhibit. M*. Repeatedly characterizing Derhem as a "disgrace to the building," *see Derhem Aff., Exhibit D, at p. 13, ¶79; p. 21, ¶135*; calling the police to Ms. Derhem's unit, suggesting that she (despite being the owner) had no right to be there. *See Exhibit D at p. 22, ¶146; p. 3, ¶17 also see Exhibit W*.

83. An example of Mr. Brumsted's summoning the police and referring to Kanayo Derhem as a disgrace is an incident involving Ms. Derhem's cleaning lady. Through a misunderstanding, the cleaning lady had not received her Zelle payment. During the subsequent encounter between Ms. Derhem and the cleaning lady, Mr. Brumsted got involved and police were summoned. The encounter was recorded by Derhem. *A transcript of the recording is found at Exhibit N*. During the encounter Mr. Brumsted referred to Ms. Derhem as a "disgrace to the building" in the presence of the police officer. *No pin-site has been provided as the entire transcript needs to be read to have a sense of the encounter. See Exhibit D at p. 13, ¶79*

### Actions of Vidal and KW Property Management, LLC

84. With the knowledge of Charles Brumsted, KW Property Management, LLC, the building management company, refused to provide concierge services to Kanayo Derhem. *See transcript of a recording made during an encounter by Ms. Derhem with the front desk clerk, Sara Lopera, employee of the management company, who announced her unwillingness to provide services to Ms. Derhem* <u>Transcript, Exhibit O, pages 1-4;</u> *of note is the presence of Charles Brumsted to the incident who advised Ms. Derhem he refused to assist Ms. Derhem*.

85. On December 25, 2019, Ms. Derhem's mother was visiting her daughter Kanayo Derhem at Bay House Miami Condominium. During that visit, on Christmas day, Derhem and her mother Dr. Anne Onyekwuluje, were at the building front desk, which was manned by Sara Lopera, a KWPM employee. When Ms. Derhem sought to retrieve a package at the front desk, Ms. Lopera refused to serve Ms. Derhem, announcing that her supervisors knew and approved of her refusal to interact with Ms. Derhem. *See Exhibit P, Affidavit of Dr. Onyekwuluje, at ¶10*.

86. On many occasions, the management company, Brumsted, Vidal and/ or BHMCA would disable Ms. Derhem's FOB precluding her access to her Unit, by preventing her use of the elevator. *See Derhem Deposition Testimony, Sept. 15, 2021, Def. Doc. 214-3, p. 201, lines 22-*

*25; p. 203, lines 9-12; p. 204, lines 7-23; p. 208, lines 1-25; p. 209, line 1 also See Exhibit D at Par. 67(f), 119, 159, 275, 276.*

87. On occasion, Ms. Derhem was excluded from the building. *See 80, supra.* It is a violation of the Bylaws of the Association and FL Law to deny an owner of access to the owner's Unit. *See Bylaws of the Bay House Miami Condominium, Defense Exhibit 1, Section X 9 (a), BHMCA 0004000, D.E. 214. See Exhibit D at Par. 67(f), 119, 159, 275, 276, 277.*

88. In her interactions with Mr. Vidal, Vidal was often hostile. On one occasion, when Ms. Derhem went to Vidal's office, Vidal began screaming at her and called the police. *Exhibit D, Derhem Affidavit, page 21, ¶ 136.*

89. On one occasion when Ms. Derhem went to Mr. Vidal's office to ask a question, Mr. Vidal confronted Ms. Derhem with a pre-transition photograph, procured from an internet search, of Ms. Derhem depicted as a man. In displaying the photograph, Mr. Vidal registered his repulsion at Ms. Derhem's transgender identity through hostile facial and bodily contortions registering his disgust and within an attempt to dissuade Derhem from running for the BHMCA BOD. *Exhibit D, Derhem Affidavit, at page 21, ¶ 137.*

90. Brumsted and Vidal routinely discouraged potential renters from renting at Unit 2605, falsely claiming that the unit owners were on the verge of foreclosure, were engaged in illegality, were financially irresponsible, and characterizing Derhem as a disgrace to the building. *Derhem Affidavit, Exh. D, Page 14, ¶ 88 and page 46 par. 303.*

91. On 11/8/19, KWPM sent a letter to BHMCA notifying BHMCA of their intent to withdraw as the property management company for the association following issues surrounding certain alleged claims of sexual harassment stemming from interactions between Joel Gonzalez and Mr. Brumsted *See Exhibit D at paragraph 102, 104, 105, 106, 107, 108, 109, 111, 112, 246*

### **Denial of access to common area amenities.**

92. Commencing in 2019, the occupants of Unit 2605 were consistently and perpetually denied access to common area amenities within Bay House Miami Condominium, for failure to pay fines "within five days" of imposition. *See Defense D.E. 214-38 also See Ex D at pars.186,7,8*

93. Suspension of access to amenities requires at least ninety days of delinquency in paying a financial obligation to the Association. *See BHMCA By Laws, Defense Exhibit 1, See Defendants' Exhibit 1, at Section IX (a) BHMCA 000400, D.E. 214*

94. Denial of access to amenities was continuous for a period of approximately two years or more, preventing any occupant of Unit 2605 from accessing building amenities such as the pool and the gym. *See Exhibit D, Derhem Affidavit, at page 9, ¶ 63 also See Ex D at pars.186,187,188*

95. Exclusion from amenities continued from 2019 through the Spring of 2022 when the fobs issued to Unit 2605 were reactivated permitting occupants of Unit 2605 to access building amenities. *Derhem Affidavit, Exhibit D, page 37, ¶s 250, 252, 253.*

### Effect of Brumsted Resignation

96. Charles Brumsted resigned as President of BHMCA in July 2020. On July 14, 2020 BHMCA filed an Amended Annual Report reflecting a new president of the Association. *See Exhibit Q, Amended Final Report.*

97. Following the resignation of Brumsted, Plaintiffs' practice of renting owner occupied Unit 2605 to co-occupants/ roommates continued unchanged. *Exhibit D, p. 37, ¶ 249.*

98. Following Brumsted's resignation as president of the Association, Unit 2605 has received only four fines, none (0) in 2022. *Exhibit D, Derhem Affidavit, page 37, ¶ 247, 248.*

99. Denial of access to common area amenities through the disabling of fobs ended in March 2022 when fobs issued to Unit 2605 were reactivated. *Exhibit D, p. 37, ¶ ¶ 252, 253.*

100. During Brumsted's tenure as President of the Association, Unit 2605 received more fines than any other unit in the building. *Exhibit D, p. 37, ¶ 259. See also Doc. 214-26, multiple minutes of meeting of the Board of Directors, imposing fines on various units. By reviewing each of the sets of minutes, one may calculate the relative frequency of imposition of fines on various units and note the total amount imposed against Plaintiffs' Unit, 2605.*

101. On March 11, 2021, the Association credited the account of Unit 2605 rescinding thousands of dollars of previously assessed fines, including fines related to alleged "illegal renters", in effect acknowledging the impropriety of the fines and related sanctions imposed during Brumsted's tenure as President of the Association. *See Exhibit B, Resident Transaction Report at Pl. 000023 also See Exhibit Z (entire document)*

### Effect of harassment on Derhem

102. As a result of the harassment experienced while residing in Unit 2605, Ms. Derhem became severely depressed; experienced weight gain; high blood pressure; and other trauma induced emotional distress and her contemplation of suicide. *See Derhem Affidavit Exhibit D, p. 1, ¶¶ 4,5, 7; 4, ¶ 14; see Onyekwuluje Affidavit, Exhibit P, ¶¶s 4, 5, 7, 8 and 10.*

14

## CERTIFICATION OF COMPLIANCE

UNDERSIGNED PLAINTIFF certifies that in preparing the Responses to Defendants' Statement of Undisputed Facts, and in Plaintiffs' additional facts, Plaintiffs have complied with the applicable provisions of Rule 56.1, Local Rules for the United States District Court, Southern District of Florida as were detailed by Plaintiffs' Counsel, Mr. Roger Schindler.

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via CM/ECF on October 14, 2022 on all counsel or parties of record on the Service List below.

By: /s/Ms. Kanayo Derhem/s/
Plaintiff

## SERVICE LIST

Evelyn Greenstone Kammet
Vernis, Bowling of Miami, P.A.
1680 NE 135th Street
Miami, FL 33181
egreenstone@florida-law.com

*Counsel for Defendants BHMCA, Sean Zahniser, James Pinkert, Alejandro Enrique, Uterera Badenes and Joshua Paul*

Craig J. Shankman
William Thomas Leveille, II
Boyd Richards Parker & Colonnelli, P.L.
100 SE 2nd Street, Suite 2600
Miami, FL 33131
cshankman@boydlawgroup.com
wleveille@boydlawgroup.com

*Counsel for Charles Brumsted, Jr.*

Jeannie A. Liebegott, Esq.
Joelle J. Vogel, Esq.
Marshall Dennehey Warner Coleman
& Goggin, P.C.
100 N.E. 3rd Avenue, Suite 1100
Fort Lauderdale, FL 33301
JALiebegott@mdwcg.com
JJVogel@mdwcg.com

*Counsel for Defendants KW Property Management, LLC, Jose Vidal, and Jose Ferreira*