**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-22318-CV-WILLIAMS**

KANAYO DERHEM, *et al.*,

      Plaintiffs,

v.

BAY HOUSE MIAMI CONDOMINIUM
ASSOCIATION, *et al.*,

      Defendants.

_____/

## <u>OMNIBUS ORDER</u>

    **THIS MATTER** is before the Court on multiple motions. Defendants Bay House

Miami Condominium Association, Inc., James Pinkert, Joshua Paul, Alejandro Enrique

Utrera Badenes, Charles Brumsted, Jr., Jonathan Ferreira, Jose Vidal, and KW Property

Management, LLC (collectively, "***Defendants***") filed a Joint Motion to Dismiss Plaintiffs'

Second Amended Complaint (DE 188) ("***Motion to Dismiss***"). Before the Court could

rule on the Motion to Dismiss, Defendants filed a Joint Motion for Summary Judgment

(DE 213) ("***Motion for Summary Judgment***"). The Motions are briefed[1] and ripe for

review. For the reasons set forth below, Defendants' Motion to Dismiss (DE 188) is

**GRANTED IN PART AND DENIED IN PART** and Defendants' Motion for Summary

Judgment (DE 213) is **GRANTED**.

---

[1] Plaintiffs struck numerous filings. For the purposes of this Order, the Court deems
Docket Entry 192 to be Plaintiffs' response to Defendants' Motion to Dismiss and Docket
Entry 235 to be Plaintiffs' response to Defendants' Motion for Summary Judgment.

## I.   BACKGROUND

The Court assumes the Parties are familiar with the facts. However, given the convoluted nature of the record in this case – both procedurally and substantively – the Court briefly catalogs the most salient points.[2] In January 2019, Plaintiff Kanayo Onyekwuluje Derhem ("***Derhem***") submitted an application to Bay House Miami Condominium Association, Inc. ("***BHMCA***") to purchase and occupy a unit. (Def. SOMF ¶¶ 4–5.) The application materials indicated that Derhem's income was $27, 671. (*Id.* ¶ 5.) Concerned about Derhem's ability to cover the costs of the unit, BHMCA requested that Derhem add a co-purchaser to the application.  (*Id.* ¶ 7.) Accordingly, Derhem added Plaintiff Mojtaba Koosej ("***Koosej***") to the application. (*Id.* ¶ 8.) Koosej, although a Co-Plaintiff in this action, resides "mostly out of state" and draws his understanding of the facts underlying this case chiefly through his communications with Derhem. (DE 266-2 at 3–4.)[3] Derhem describes Koosej as a friend, although she cannot recall when they met or how they met. (DE 214-3 at 18.)

---

[2] The following facts are adopted largely from Defendants' Statement of Material Facts ("***Def. SOMF***") (DE 214). Plaintiffs' Statement of Material Facts ("***Pl. SOMF***") (DE 266) does not comply with Local Rule 56.1, which sets forth detailed requirements for an opponent's statement of material facts. At various points, Plaintiffs indicate that they dispute a fact only to insert additional information unrelated to the fact set forth by Defendants. (*Compare, e.g.,* Pl. SOMF ¶ 4, *with* Def. SOMF ¶ 4; Pl. SOMF ¶ 14, *with* Def. SOMF ¶ 14.) Additionally, much of Plaintiffs' recitation of the facts relies on Derhem's affidavit ("***Derhem Aff.***") (DE 266-2 at 45–96) which itself references exhibits that are not in the record (*see, e.g.,* Derhem Aff. ¶¶ 50, 51, 53, 61, 67) and is full of conclusory allegations, impermissible legal conclusions, and inadmissible hearsay that could not be reduced to an admissible form at trial. Accordingly, the Court cannot consider much of Plaintiffs' characterization of events. *See Macuba v. Deboer*, 193 F.3d 1316, 1324 (11th Cir. 1999).

[3] Citations are to CM/ECF page numbers.

Twenty-four days after the initial application was submitted, Plaintiffs received the approval they sought. (Def. SOMF ¶ 9.) Relevant to this action, the Declaration of Condominium for BHMCA includes the following:

> The Association shall have all of the powers and duties set forth in the Act and the Declaration of the Condominium, Articles of Incorporation, and Bylaws of the Association, and all of the powers and duties reasonably necessary to operate the Condominium pursuant to the Declaration of the Condominium as it may be amended from time to time, including, but not limited to the following . . . the power to levy reasonable fines and suspend the right to use common elements according to Section 718.303(3), Florida Statutes, and the power to suspend the voting rights of a member according to Section 718.304(5), Florida Statutes.
>
> Leasing - All leases shall be deemed to be made subject to this Declaration, its exhibits, the Rules and Regulations of the Association, and the Act. No Unit shall be leased or rented by the Unit Owner for transitory or hotel purposes, which are hereby defined as (a) rentals for less than thirty (30) days, or (b) rentals where the occupants of the unit are to be provided services, such as maid service or furnishing of laundry and linens. No unit may be leased more than twice in any twelve month period. All leases shall be in writing. A Unit Owner desiring to lease his Unit shall, at least 20 days before the tenant is to be given possession of the unit, submit to the Association a copy of the proposed lease, together with such other information as the Association shall reasonably require. . . . The tenant shall not take possession of the unit until the lease shall be approved in writing by the Association.

(DE 214-1 at 5–7, 32.)

After gaining possession of the unit, Plaintiffs advertised the unit on Airbnb, Craigslist, Facebook Marketplace, and Roomster. (Def. SOMF ¶ 14.) In April 2019, Plaintiffs allege that they sought BHMCA approval for a roommate – although the evidence they reference to support this contention is what appears to be a transcription

of a conversation that took place between Derhem and Brumsted.[4] (DE 266-2 at 540–48.) Defendants argue – and Derhem conceded in her deposition – that Plaintiffs did not gain approval for the roommate, as required by BHMCA procedures, and instead registered the prospective roommate as a 'guest' in violation of more BHMCA policies. (Def SOMF. ¶ 18.)

Defendants establish that Derhem violated numerous BHMCA policies for having unauthorized visitors, leaving pet feces in the elevator, and leaving a couch in a shared hallway. (*Id*. ¶ 25.) BHMCA levied fines for these offenses against Plaintiffs. (*Id*. ¶¶ 21, 25, 26.) Plaintiffs do not dispute that any of these violations occurred and instead "recognize that a violation was issued" and point to subsequent refunds[5] of the fines as Defendants' admission that the fines were "fraudulent." (Pl. SOMF ¶ 19.) The Court finds no merit in this argument. In November 2019, Derhem sought a petition for injunction for protection against domestic violence against one of her roommates, who had not been approved by BHMCA. (Def. SOMF ¶¶ 30, 33.) Within a week, BHMCA sent a cease-and-desist letter to Plaintiffs to cease all short-term rentals of their unit. (*Id*. ¶ 34.) Nonetheless, within a month, Plaintiffs had another unapproved individual living in the unit and additional fines were imposed. (*Id*. ¶ 35.) Concerningly, despite basing a substantial

---

[4] The Court presumes that Derhem recorded the conversation and provided the recording to a transcription service to produce this document. Florida law prohibits recording a conversation without the consent of both parties. Fla. Stat. § 934.03. Since nothing in the record indicates that Brumsted consented to the recording, the Court affords this evidence the weight it warrants.

[5] Plaintiffs include printouts of their Resident Transaction Report to support this contention. (DE 266-2 at 551.) However, it is not clear from the document that any of fines were refunded and nothing in the record, beyond Derhem's own statements, indicates that the refunds—if there were any—were based upon any determination that the fines were wrongly imposed.

portion of her claims against Defendants on their failure to approve roommates and barring her from common spaces, during her deposition, Derhem was unable to answer basic questions related to the unit such as: Who is responsible for paying the mortgage on the unit? Who pays the utilities? (DE 214-4 at 35–36.)

Recognizing that the record includes evidence of additional violations of BHMCA policies and rules by Plaintiffs, the Court incorporates these infractions by reference to the rest of Defendants' Statement of Material Facts. Ultimately, this is an action predicated upon alleged race and sex discrimination as Derhem is a Black transgender woman, who alleges that non-Black, non-transgender occupants of BHMCA were treated differently by Defendants than she was. Derhem's affidavit catalogs the following instances of discrimination:

- During the interview process—prior to Plaintiffs' purchase of the unit—Brumsted asked Derhem whether she could have children and made a reference to BHMCA being a family-oriented building. (Derhem Aff.)

- Brumsted and Vidal, a building manager, referred to Derhem as a "disgrace to the building." (*Id.*)

- Vidal confronted Derhem with a pre-transition photograph of herself and "through his body language and facial expression . . . displayed disgust with Derhem's transgender identity." (DE 235 at 8.)

- Following a fines committee meeting, Derhem stepped out of the room but lingered nearby and overheard Brumsted referring to her as a 'monkey' to members of the committee through the door. (DE 214-3 at 41.)

Plaintiffs further argue that Defendants imposed fines, denied Plaintiffs access to concierge services, and barred Plaintiffs from accessing the common spaces in the building based on discriminatory animus.

Before addressing the merits of each motion, the Court briefly notes the torturous procedural history of this case. Plaintiffs have repeatedly failed to adhere to Court practices, procedures, and deadlines and have been represented by various counsel or appeared *pro se*. (*See, e.g.,* DE 309; DE 266; DE 293.) While the Court affords more leniency to *pro se* plaintiffs, Plaintiffs consistent refusal to adhere to procedures or Court orders has created a nearly unintelligible record, requiring the Court to attempt to piece together Plaintiffs' arguments and evidence through various disparate filings. As such, inevitable inconsistencies exist. While the Court has attempted to reconcile the various allegations, certain portions of the record remain incomprehensible.

## II.   MOTION TO DISMISS

### A.   *Legal Standard*

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept factual allegations as true and draw reasonable inferences in Plaintiffs' favor. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 663. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Rule 12(b)(6) does not allow dismissal of a claim because the court anticipates "actual proof of those facts is improbable." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "The pleadings of a *pro se* litigant are to be held to less stringent standards than those drafted by an attorney." *Olsen v. Lane*, 832 F. Supp. 1525, 1527 (M.D. Fla. 1993) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). However, "the *pro se* litigant must still meet minimal pleading standards." *Id.*

### B. *Discussion*

Defendants move to dismiss Plaintiffs' Second Amended Complaint arguing that Plaintiffs' filing of the Second Amended Complaint: (1) is procedurally defective; (2) constitutes undue delay; (3) prejudicially alters counts the Court did not grant leave to amend; (4) prejudicially alters theories of liability; and (5) cannot be cured with future amendments. The Court addresses each of Defendants' arguments in turn.

#### 1. Plaintiffs' failure to amend the caption does not warrant dismissal.

Defendants argue that the Second Amended Complaint violates Federal Rule of Civil Procedure 10(a) and the Court's October 15, 2021 order. Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint [] name all the parties." Fed. R. Civ. P. 10(a). On October 15, 2021, the Court directed Plaintiff to "amend the Complaint to include the name used to purchase the property at issue." (DE 148.) In the Second Amended Complaint, Plaintiffs did not amend the case caption but stated that "Plaintiff

Derhem purchased her interest in the unit under the name Kanayo Onyekwuluje. Derhem is her married name and the name that she uses since marriage." (DE 176 at 2.) Defendants argue that such disclosure is insufficient because a nearly identical statement appears in Plaintiffs' First Amended Complaint, yet the Court granted Defendants' prior motions to dismiss based on lack of standing. (DE 188 at 5.) In response, Plaintiffs state that they have "no objection to the modification of the caption to read 'Kanayo Derhem, a/k/a/ Kanayo Onyekwuluje.'" (DE 192 at 3 n.1.)

Federal Rule of Civil Procedure 10(a) is rooted in "the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992). Here, Plaintiffs have disclosed the name used to purchase the property at issue, giving Defendants sufficient notice of Derhem's identity. Furthermore, "[a]lthough captions provide helpful guidance to the court, they are not determinative as to the parties to the action." *Lundgren v. McDaniel*, 814 F.2d 600, 604 n.2 (11th Cir. 1987); *see also Petralia v. Centennial Life Ins. Co.*, 1994 WL 143052, at *2 (M.D. Fla. 1994) ("Errors in captions are not fatal defects."). Therefore, while Plaintiffs should have amended the case caption to include the name used to purchase the property at issue, this failure alone does not warrant dismissal.

## 2. Plaintiffs' delayed filing of the Second Amended Complaint does not constitute undue delay.

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f),

whichever is earlier." In all other instances, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave", and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court need not allow amendment if amendment would constitute (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party by virtue of allowance of the amendment," or (5) "futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As the Second Amended Complaint was filed pursuant to the Court's order,[6] the Court must only determine whether the Second Amended Complaint was timely filed. On November 19, 2021, the Court entered an order staying all deadlines to allow for Plaintiffs to obtain new counsel. (DE 160.) Therefore, at the time Plaintiffs filed the Second Amended Complaint, there were no operative scheduling order deadlines. Furthermore, Plaintiffs' most recent counsel appeared on December 3, 2021, and filed the Second Amended Complaint within roughly seven weeks.

Defendants maintain that the Parties had "an agreement . . . that Plaintiffs would file a Second Amended Complaint on or before January 7, 2022, [but that] Plaintiffs filed their Second Amended Complaint on January 24, 2022." (DE 188 at 5.) However, a two-week delay, given that the Court had ordered Plaintiffs to amend the complaint to join an indispensable party, is not so substantial as to constitute an undue delay. *See Collins v.*

---

[6] As discussed, *supra*, the Court's October 15, 2021 order instructed Plaintiffs to amend the complaint to include the name used to purchase the property and to join an indispensable party. (DE 148.) Accordingly, the Court finds that the Second Amended Complaint was filed with leave of the Court. Fed. R. Civ. P. 15(a)(2).

*GKD Mgmt., LP*, No. 3:19-CV-121-TCB, 2022 WL 17420791, at *3 (N.D. Ga. Aug. 31, 2022) (collecting cases) ("Circuit precedent finding undue delay does so only in extreme circumstances when the litigation is too far developed. . . . Indeed, the circuit has permitted amendments even when the motion to amend came shortly before trial."). Furthermore, no stipulation regarding the deadline was filed with the Court and the Court declines to attempt to enforce any such agreement. Accordingly, Defendants' undue delay argument does not warrant dismissal of Plaintiffs' Second Amended Complaint.

**3. Plaintiffs prejudicially altered counts the Court did not grant leave to amend and improperly altered theories of liability in the Second Amended Complaint.**

The Court next examines whether Plaintiffs were permitted to alter the allegations in their Second Amended Complaint. Defendants argue that it is "severely prejudicial to Defendants for Plaintiffs to alter the landscape of the case to allege new theories, over a year and a half after the initial filing of the Complaint, and where Defendants have no opportunity to investigate the merits of Plaintiffs new claims through depositions or written discovery [given that discovery is closed]." (DE 188 at 11.) Specifically, Defendants take issue with the allegations set forth in paragraphs 72, 83, 94, 148, 202, and 249.[7]

---

[7] In summary, they are: "Mr. Brumsted had Plaintiff Derhem's vehicle towed from her own parking space." (DE 176 ¶ 72.)

"Plaintiff Derhem met with Mr. Vidal . . . Vidal advised Ms. Derhem that 'Chuck is making me [Vidal] do things, which are compromising my [Vidal's] CAM License.'" (DE 176 ¶ 83.)

"The front desk refused to let her in to access the elevator. As a result, Plaintiff was forced to climb 26 stories to her unit. . . ." (DE 176 ¶ 94.)

"Plaintiffs found these emails unwelcomed and offensive based on her race and sex . . ." (DE 176 ¶ 148.)

"[C]ourts routinely grant leave to amend even where a party seeks to assert new theories of liability or claims." *In re Farm-Raised Salmon and Salmon Products Antitrust Litigation*, 2021 WL 5707570, at *3 (S.D. Fla. Oct. 27, 2021). However, where the amendment comes after the close of discovery, courts are reluctant to grant leave to amend as permitting the amendment will delay the start of trial. *Zarrella v. Pacific Life Ins. Co.*, 809 F. Supp. 2d 1357, 1373 (S.D. Fla. 2011) ("As such, allowing such a . . . claim to proceed at this time would significantly impact [the defendant's] preparation for trial and the course of this entire case.").

Here, discovery was closed at the time Plaintiffs filed the Second Amended Complaint which set forth facts known to Plaintiffs since the inception of this lawsuit. Consequently, allowing these amendments after the close of discovery would unduly and unfairly prejudice Defendants. *See Quinn v. Deutsche Bank Nat. Trust Co.*, 625 F. App'x. 937, 940 (11th Cir. 2015) (denying leave to amend because "[a] plaintiff's request to amend his complaint based on facts already known to him before he filed suit indicates a lack of diligence in prosecuting the suit"); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("The facts upon which the claims for breach of fiduciary duty against the individual defendants were based were available at the time the complaints were filed . . . . Amendment at the late date offered would have been futile, caused undue delay and expense, and resulted in unfair prejudice to the individual defendants."). Accordingly,

---

"On December 9th and 10th of 2019 and before (multiple occasions), Plaintiffs properly submitted, in writing, to BHMCA Miami Condominium Association, Inc. their requests for certain documents and records." (DE 176 ¶ 202.)

"These acts were arbitrary and capricious, because they were not properly based on BHMCA rules and Florida statutes. . . ." (DE 176 ¶ 249.)

Defendants' Motion to Dismiss is granted as to this ground and Plaintiffs' improper and impermissible additions to the Second Amended Complaint are stricken.

### III.   MOTION FOR SUMMARY JUDGMENT

#### A. *Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any such dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment carries the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case." *Feinman v. Target Corp.*, 2012 WL 6061745, at *3 (S.D. Fla. Dec. 6, 2012) (citing *Celotex*, 477 U.S. at 325).

Once the movant satisfies their burden, the burden of production shifts to the nonmoving party, which must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux*

*v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The inquiry at this stage by a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Lake v. Nationwide Mut. Ins. Co.*, 2021 WL 2188488, at *4 (N.D. Ala. Feb. 5, 2021) (quoting *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998)).

## B. *Discussion*

Defendants advance five arguments in their Motion for Summary Judgment. First, Defendants argue that summary judgment as to Count I is proper because Plaintiffs have failed to establish a *prima facie* case of race or sex-based discrimination. Second, Defendants argue that summary judgment on Counts II and IV of the Second Amended Complaint is warranted because Plaintiffs improperly amended these counts, as discussed *supra* Section II.B.3. Third, Defendants argue that summary judgment on Count II is required as it is barred by res judicata. Fourth, Defendants argue that summary judgment on Counts III, IV, and V is proper because Plaintiffs have failed to plead discernable claims for relief. Finally, Defendants argue that summary judgment on Count VI is appropriate because Plaintiffs have failed to identify any legally imposed duty of care.

Plaintiffs address only Counts I, III, IV, and V in their Response. A "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One*

*Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). However, "[w]hen a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims." *Johns v. CSX Transportation, Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016). Accordingly, the Court finds that Plaintiffs have abandoned Counts II and VI and grants summary judgment to Defendants on those claims. The Court addresses the remaining counts of Plaintiffs' Second Amended Complaint in turn.

### 1. Count I – Housing Discrimination on the Basis of Race and Sex

"[T]he language of the [Fair Housing Act ("**FHA**")] is broad and inclusive, prohibits a wide range of conduct, has a broad remedial purpose, and is written in decidedly far-reaching terms."[8] *Georgia State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631–32 (11th Cir. 2019) (citations omitted). The FHA "prohibits discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.'" *Id.* at 631 (quoting 42 U.S.C. § 3604(b)).  To prevail on a claim under

---

[8] To the extent that the Parties dispute the application of the FHA to post-acquisition conduct, the Court looks to Eleventh Circuit precedent, which instructs that "because there is no temporally limiting language, the plain language of § 3604(b) may, under certain circumstances, encompass the claim of a current owner or renter for discriminatory conduct related to the provision of services, as long as those services have a connection to the sale or rental of the dwelling." *Georgia State Conf. of the NAACP*, 940 F.3d at 632. The Court finds that Plaintiffs' claims related to fines and access to concierge services and amenities are sufficiently tied to the sale of the dwelling as Plaintiffs have indicated that they specifically purchased the unit based on the ability to have roommates and the amenities advertised. As to the remaining alleged discriminatory actions post-acquisition, Plaintiffs have not adequately demonstrated how such actions could be tied to the sale or rental of the unit.

the FHA, "a plaintiff may present either direct evidence of discriminatory or retaliatory intent, manifested by the actions or remarks of the defendant, or use the factors set forth in burden-shifting analysis developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to raise, by indirect or circumstantial evidence, an inference of discrimination." *Hall v. Lowder Realty Co.*, 160 F. Supp. 2d 1299, 1313 (M.D. Ala. 2001); *see also Boykin v. Bank of Am. Corp.*, 162 F. App'x 837, 838 (11th Cir. 2005). Here, Plaintiffs argue that they have demonstrated both direct and circumstantial evidence from which a jury could reasonably infer Defendants discriminated against Plaintiffs. The Court examines the evidence under both standards.

### i. Direct Evidence

"Direct evidence of discrimination is evidence, that, 'if believed, proves the existence of a fact in issue without inference or presumption.'" *Gonzales v. Am. Fam. Life Assur. Co.*, 202 F. Supp. 2d 1373, 1377 (M.D. Ga. 2002) (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir.1997)). "Direct evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Id.* at 1378 (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989)). The Court finds that none of the evidence proffered by Plaintiffs meets this stringent standard. Instead, Plaintiffs ask the Court to construe delays in application processing, the imposition of fines, and invasive and inappropriate questions and comments by Brumsted as direct evidence of discrimination. Plaintiffs own briefing undercuts their direct evidence argument: Plaintiffs categorize Brumsted's comments and questions as "an obvious reference" to Derhem's gender and "implying that a family-oriented building would somehow be unsuitable for occupancy by a

transgender woman." (DE 235 at 6.) A direct evidence claim, by definition, cannot be based on references and implications. To the extent that Plaintiffs argue that Brumsted's reference to Derhem as a 'monkey' constitutes direct evidence of discrimination, Eleventh Circuit precedent has established that to constitute direct evidence of discrimination, a racial slur must be used in relation to the decision-making process. *Addison v. Ingles Markets, Inc.*, 515 F. App'x 840, 842 (11th Cir. 2013); *see also E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1070 (11th Cir. 1990) (affirming trial court's finding that "not all racial slurs rise to the level of Title VII violations"). Here, the fines had already been imposed against Plaintiffs when Brumsted used the term. Accordingly, Plaintiffs' direct evidence argument fails.

### ii. Circumstantial Evidence

When evaluating circumstantial evidence, the *McDonnell Douglas* framework is one option to evaluate FHA claims. Under this framework,

> the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

*Sec'y, U.S. Dep't of Hous. & Urb. Dev., on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990). "The elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances." *Boykin*, 162 F. App'x at 838 (citations omitted); *see also Hall*, 160 F. Supp. 2d at 1314 ("Many different articulations of the prima-facie case exist, varying with the context of the decision at issue and the types of proscribed practices involved.") Despite such variances, "[t]he essence

of the prima-facie case is that the plaintiff presents circumstantial evidence sufficient to generate a reasonable inference by the fact-finder that the defendant used prohibited criteria in making a decision or taking action affecting the plaintiff." *Hall*, 160 F. Supp. 2d at 1314. It is undisputed that Plaintiffs are members of protected classes. The Court finds that Defendants' repeated comments to Derhem about her gender identity, confrontation of Derhem with a pre-transition photo of her, and referring to Derhem as a 'monkey' could lead a reasonable jury to infer that Defendants were motivated by discriminatory animus against Black and/or transgender people when imposing fines against Plaintiffs and barring them from use of amenities and concierge services. Therefore, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions.

To articulate a legitimate, nondiscriminatory reason, Defendants "need not persuade the court that [they were] actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Instead, "[t]he explanation provided must be legally sufficient to justify a judgment for the defendant[s]." *Id.* at 255. The Court finds that Defendants have done so. Defendants argue that Plaintiffs violated BHMCA rules "on a constant and ongoing basis." (DE 213 at 6.) Specifically, Defendants contend that Plaintiffs "repeatedly engaged in short term room rentals as part of their business, and failed to register or seek approval of their guests, visitors, or lessees." (*Id.*) The Court finds that ongoing failures to comply with a condominium association's governing rules would be legally sufficient to justify the imposition of fines and bans from shared amenities. Accordingly, the burden shifts back to Plaintiffs to demonstrate that Defendants' proffered explanation is "pretext to mask unlawful discrimination." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

To do so, Plaintiffs are required to "present concrete evidence in the form of specific facts which show that [Defendants'] proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." *Boykin*, 162 F. App'x at 839.  The Court finds that Plaintiffs cannot meet their burden. First, much of Plaintiffs' argument rests on Derhem's affidavit which is replete with "conclusory allegations without specific supporting facts [that therefore] have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Derhem's fifty-two-page affidavit categorizes Defendants behavior as "unlawful" and includes impermissible legal arguments related to Defendants' Motion for Summary Judgment (DE 226-2 at 93, 94, 95 44–96.)

Second, the affidavits of other BHMCA tenants do not support a finding of pretext. For example, Kavir Rambharat's affidavit states that his roommates had been identified through various addendums to the lease agreement with BHMCA. (DE 266-2 at 98.) In contrast, Plaintiffs repeatedly failed to gain approval of roommates from BHMCA and impermissibly used the unit as an Airbnb, which led to the imposition of fines. The same issue arises with the other affidavits Plaintiffs have submitted to demonstrate pretext – none of the affidavits include any indication that other owners or renters at BHMCA failed to register roommates, used the units for short-term rentals, or violated the prohibition against leasing a unit more than twice a year.

Finally, Plaintiffs attempt to prove discriminatory intent by demonstrating that other tenants easily and quickly gained approval of potential roommates. However, Defendants argue that Plaintiffs did not properly file documentation or abide by BHMCA procedures when bringing in roommates and Plaintiffs have not submitted evidence that they complied with the proscribed procedures. In fact, the record demonstrates that when

Plaintiffs were unable to gain approval for a prospective roommate, they circumvented BHMCA policies by registering the proposed roommate as a guest. (DE 266 ¶ 18; DE 214-25.) Plaintiffs are unable to demonstrate a genuine dispute of material fact to prove that Defendants were motivated by discriminatory animus rather than by Plaintiffs' failure to abide by BHMCA policies.

### iii.  Mosaic Theory

The Eleventh Circuit recently clarified the convincing mosaic framework used to evaluate circumstantial evidence discrimination cases, holding that a court need only find that the plaintiff has "presented enough evidence for a reasonable juror to infer intentional discrimination." *McCreight v. AuburnBank*, No. 22-12577, 2024 WL 4232440, at *10 (11th Cir. Sept. 19, 2024). Put another way, "the terms '*McDonnell Douglas*' and 'convincing mosaic' do not dictate the legal standard that plaintiffs are entitled to receive at summary judgment." *Id.* at 11. Instead, a "plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue." *Id.* at *10.

However, as discussed *supra*, Plaintiffs have failed to proffer evidence that could create a genuine dispute of material fact. Instead, the record indicates that Plaintiffs repeatedly and consistently violated BHMCA policies. Plaintiffs have failed to put forth any valid comparators of other individuals who routinely flouted BHMCA rules and, in their absence, the Court cannot find a triable issue that would allow a jury to infer intentional discrimination.

### iv.  Hostile Environment Pursuant to 24 CFR 100.600

"Department of Housing and Urban Development regulations and interpretive case law reveal that actionable harassment arises primarily in two contexts: when behavior

towards the tenant (1) constitutes quid pro quo sexual harassment; or (2) creates a hostile housing environment." *Noah v. Assor*, 379 F. Supp. 3d 1284, 1290 (S.D. Fla. 2019) (citing 24 C.F.R. § 100.600). Plaintiffs argue that Defendants' actions "created a hostile living environment which drove Ms. Derhem to distraction and extreme emotional distress." (DE 235 at 13.) In contrast, Defendants argue that many of the alleged comments were unrelated to race or sex and were neither severe nor pervasive. (DE 213 at 8.)

To prevail on a hostile environment claim based on race and sex discrimination, Plaintiffs must demonstrate:

> (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her [protected characteristic], (4) the harassment was sufficiently severe or pervasive to alter the terms of her [housing] and create a discriminatorily abusive [living] environment, and (5) [Defendants are] responsible for the environment under a theory of vicarious or direct liability.

*Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018). It is undisputed that Derhem belongs to two protected classes based on her race and gender. Even assuming Plaintiffs could demonstrate that Defendants' actions were based on Derhem's protected characteristics, the Court finds that the alleged acts were not severe or pervasive enough to support a finding of a hostile environment.

Assessment of whether conduct is severe or pervasive involves "both an objective and subjective component. In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance. . . ." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). As Plaintiffs concede, many of the statements and acts by Defendants were race and sex neutral, although it is clear that

Derhem felt them to be subjectively severe and pervasive. In contrast, the Court is compelled to find Brumsted's alleged use of the term 'monkey'[9] to refer to Derhem, a Black woman, to be utterly repugnant.[10] Nonetheless, the Eleventh Circuit has held that "racially derogatory language alone," spread over a period of time is "too sporadic and isolated" to support a finding of severe and pervasive conduct. *Id.* at 1379. Therefore, Plaintiffs' hostile environment claim fails. Accordingly, Defendants are granted summary judgment as to Count I.

**2. Count III – Violation of Rights of Condominium Owner Supplemental Claim § 718.303; Count IV – Violation of Rights of Condominium Owner Supplemental Claim § 718.110, 718.303, and 718.123; Count V – Breach of Fiduciary Duty**

Defendants seek summary judgment on Counts III, IV, and V of the Second Amended Complaint because Plaintiffs have failed to plead discernable claims for relief. As an initial matter, the Court notes that Plaintiffs cite absolutely no caselaw to support their arguments regarding these counts. Even so, the Court evaluates the merits of each claim.

---

[9] During his deposition, Brumsted denied ever making such a statement. (DE 214-2 at 78: 5.) However, where "opposing parties tell two different stories," the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–248). Even viewing the evidence in the light most favorable to Plaintiffs as the nonmoving party, the alleged use of the term does not defeat Defendants' Motion for Summary Judgment.

[10] The Court further notes that Brumsted is no longer on the Board of Directors of BHMCA and has not been since July 2020. (DE 191-1 ¶ 3.)

### *i.  Counts III and IV*

In Count III, Plaintiffs allege that Defendants weaponized the fines committee against Plaintiffs and prevented Derhem from joining the committee. In Count IV, Plaintiffs allege that Defendants' "illegally refused to cooperate in the lease approval process for qualified tenants." (DE 176 ¶ 227.) These claims are brought pursuant to the following statutes:

- Florida Statute section 718.303 permits "that an action for failure to comply with the Condominium Act or the declaration may be brought by the association or by a unit owner against the association, a unit owner, certain directors, and tenants." *In re Spa at Sunset Isles Condo. Ass'n, Inc.*, 454 B.R. 898, 906 (Bankr. S.D. Fla. 2011) (quoting Fla. Stat. § 718.303(1)).

- Florida Statute section 718.110 outlines procedures for amendment of a declaration of condominium.

- Florida Statute section 718.123 provides unit owners with a right to use common elements, common areas and recreation facilities with their invited guests, subject to the "reasonable rules and regulations pertaining to the use of such common elements." Fla. Stat. § 718.123.

As an initial matter, the Court cannot ascertain the applicability of Florida Statute section 718.110 to Plaintiffs' claims and thus disregards this statute. Although Plaintiffs fail to clearly articulate the applicability of Florida Statute sections 718.303 and 718.123, the Court finds that even if Plaintiffs were able to demonstrate a connection between the statute and their claims, Defendants would prevail. In Florida, in an "effort not to second-guess management decisions, courts have applied an adaptation of the business

judgment rule to decisions made by condominium associations." *Hollywood Towers Condo. Ass'n, Inc. v. Hampton*, 40 So. 3d 784, 787 (Fla. Dist. Ct. App. 2010) (collecting cases). "In applying the business judgment rule to condominium association decisions, courts have generally limited their review to two issues: (1) whether the association has the contractual or statutory authority to perform the relevant act, and (2) if the authority exists, whether the board's actions are reasonable." *Id.* at 787.

As to both the fines and the banning of Plaintiffs from common spaces, Defendants are able to satisfy both elements. Article VIII(3)(m) of the BHMCA provides that:

> The Association shall have all of the powers and duties set forth in the Act and the Declaration of the Condominium, Articles of Incorporation, and Bylaws of the Association, and all of the powers and duties reasonably necessary to operate the Condominium pursuant to the Declaration of the Condominium as it may be amended from time to time, including, but not limited to the following . . . the power to levy reasonable fines and suspend the right to use common elements according to Section 718.303(3), Florida Statutes, and the power to suspend the voting rights of a member according to Section 718.304(5), Florida Statutes.

Therefore, it was within Defendants' contractual and statutory authority to levy fines and restrict Plaintiffs' use of the common areas. To determine the reasonableness of Defendants' actions, the Court "must give deference to a condominium association's decision if that decision is within the scope of the association's authority and is reasonable—that is, not arbitrary, capricious, or in bad faith." *Hollywood Towers Condo. Ass'n, Inc*, 40 So. 3d at 787. "Although the question of reasonableness is ordinarily an issue of fact, a summary judgment in favor of an association should be affirmed if the record plainly demonstrates that the association's actions were reasonable." *Share v. Broken Sound Club, Inc.*, 312 So. 3d 962, 972 (Fla. Dist. Ct. App. 2021). Here, the record is replete with evidence that Plaintiffs violated numerous BHMCA policies on an ongoing

basis, including admissions by Derhem in her deposition testimony that she knowingly evaded certain BHMCA policies. Although Plaintiffs allege Defendants acted with discriminatory animus, they do not proffer evidence to create a genuine dispute of material fact beyond Derhem's conclusory affidavit. Accordingly, Defendants are granted summary judgment on Counts III and IV.

### ii. Count V

In Count V, Plaintiffs allege a breach of fiduciary duty against Brumsted as President of BHMCA. Specifically, Plaintiffs contend that Brumsted failed to maintain records related to BHMCA and targeted Plaintiffs for "selective and specific application" of BHMCA rules. (DE 176 ¶¶ 234–35.) Florida Statute section 718.111 generally establishes immunity from suit for condominium board members. However, three exceptions apply, one of which Plaintiffs invoke here:

> An officer, director, or agent shall be liable for monetary damages as provided in s. 617.0834 if such officer, director, or agent breached or failed to perform his or her duties and the breach of, or failure to perform, his or her duties constitutes . . . recklessness or an act or omission that was in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 718.111(1)(d). As to the records claim, Defendants have provided testimony that BHMCA's records were managed by the Management Company. (DE 214 ¶ 51.) Although Plaintiffs dispute this fact, the portion of the record they cite to does not establish that this fact is actually disputed. (DE 266 ¶ 51.)

Finally, as to the selective and specific application of BHMCA policies, as discussed *supra*, Plaintiffs have failed to put forth evidence that any other BHMCA unit owners repeatedly violated BHMCA policies in the same manner and to the same extent

that Plaintiffs did. Without more, the Court cannot infer a genuine dispute of material fact that Brumsted was motivated by anything other than a desire to enforce rules against a unit owner who openly flouted BHMCA policies. Accordingly, Defendants are granted summary judgment on Count V.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss the Second Amended Complaint (DE 188) is **GRANTED IN PART AND DENIED IN PART**.

2.  Defendants' Motion for Summary Judgment (DE 213) is **GRANTED**.

3.  Plaintiffs' Motion for Hearing (DE 198) is **DENIED AS MOOT**.

4.  The Parties' Joint Motion *in limine* (DE 255) is **DENIED AS MOOT**.

5.  Defendants' Motion to Strike (DE 297) is **DENIED AS MOOT**.

6.  Plaintiffs' Motion for Leave to File a Sur-Reply (DE 309) is **DENIED AS MOOT**.

7.  Plaintiffs' Motion for Leave to File Supplemental Exhibits (DE 312) is **DENIED AS MOOT**.

8.  Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules for the Southern District of Florida, Defendants' Motion for Attorney Fees (DE 162) and Plaintiffs' Motion for Sanction (DE 187) are **REFERRED** to Chief Magistrate Judge Edwin G. Torres for any appropriate action authorized by law.

9.  The Clerk of Court is directed to **CLOSE** this case.

10. All deadlines and hearings are **CANCELED**.

11. Final judgment will be entered by way of another order.

**DONE AND ORDERED** in Chambers in Miami, Florida on this <u>23rd</u> day of September, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE